ARY CAEMAN, *et al.*, V. LUCY VAN HARKE, *et al.*

1. WILL—*Jurisdiction of Dictrict Court.* The district court has jurisdiction in an action brought by an interested person to contest a duly-executed will that has been admitted to probate, and where its validity is challenged on the ground that it has been revoked by a later will.

2. LATER WILL, *Requisites of.* To maintain the issue in such an action, it is incumbent upon the plaintiff to show that the later will, or revoking instrument, was signed, attested and subscribed with all the solemnity and formality prescribed by the statute for the making of a will.

3. ——— *Declarations of Testator.* In an action disputing the validity of a will, on the ground of revocation, no declarations of the testator can be received in evidence, which would impeach its validity, except such as are made at, or so near the time of the alleged act of revocation as to become a part of the *res gestœ.* All other declarations of the testator are mere hearsay, and inadmissible.

4. ——— *Inadmissible Evidence.* In such an action all communications had personally between the plaintiffs and the decedent regarding the will, or its revocation, are inadmissible.

5. PAROL TESTIMONY; *Foundation.* Before the heirs contesting a will on the ground of revocation can offer parol testimony of the provisions of a revoking instrument, they must first not only show the existence of such an instrument, but also a *spoliation* thereof, or that a diligent, exhaustive and fruitless search has been made therefor.

*Error from Johnson District Court.*

ACTION brought by *Mary Caeman* and another against *Lucy Van Harke* and five others, to set aside a certain will. Trial at the March Term, 1884, and judgment for defendants. The plaintiffs bring the case to this court. The opinion states the facts.

*Burris & Little,* for plaintiffs in error.

*A. Smith Devenney,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: Joseph Van Harke, sr., died on the 13th day of March, 1883, leaving as his heirs at law, Lucy Van Harke, his widow, and Charles Van Harke, Joseph Van Harke, jr., John Van Harke, Susie Van Harke, Mary Caeman and Lucy Jackson his children. On the 30th day of January, 1874, the decedent made and executed a will, with John Nunnick and Peter Wertz as executors. On the 29th day of March, 1883, Lucy Van Harke, the widow, appeared in the probate court, and the will aforementioned having been produced, was then opened and read in the presence of J. T. Rowland, one of the witnesses to the will, and Peter Wertz, one of the persons appointed as executors, when the widow, after being informed of her rights in the premises, elected to take her portion of the estate under the provisions of the will. Afterward, and on the 12th day of April, 1883, the will was offered for probate in the probate court of Johnson county, Kansas, and the witnesses to the will were examined in open court, and on consideration of all the proofs offered, the court found that the will was duly attested and executed; that the testator at the time of executing the same was of sound mind and memory, and not under any restraint, and made an order

admitting the will to probate. It does not appear that there was any objection made to this order, or any appeal taken therefrom. Thereafter, and on the 6th day of July, 1883, two of the children of the decedent, the plaintiffs herein, brought this action in the district court of Johnson county, alleging the execution and probating of the will as above stated, but charging that the same was invalid, in that it had been expressly revoked by a subsequent will made by the decedent in the fall of 1877, and which they allege was secreted or destroyed by Lucy Van Harke, their mother. The widow and the remaining children in their separate answers admit the due execution and probate of the will dated January 30th, 1874, and allege it to be the last will and testament of the deceased, and specially deny its revocation, or that there was any will of a later date made by the testator.

The case was tried by the court without a jury, and upon the trial the defendants objected to the introduction or consideration of any testimony, for the reason that the court was without jurisdiction to try the action, claiming that it should have been brought in the probate court; and it is insisted that the testimony of the plaintiffs ought not to be considered by this court, for the same reason. This objection is not tenable. The purpose of the proceeding is not to probate the subsequent will, if there be one; but, from the plaintiffs' petition, they obviously seek to contest the validity of the will which has been admitted to probate, and to have it canceled and set aside on the ground that it has been revoked. Authority to maintain this action is expressly given in the act relating to wills, where it is provided that—

"The mode of contesting a will shall be by civil action in the district court of the county in which the will was admitted to probate, which action may be brought at any time within two years after the probate of the will, and not afterward, by any person interested in the will or estate of the deceased." (Comp. Laws of 1879, ch. 117, § 20.)

After the plaintiffs had introduced their testimony, the defendants interposed and filed a demurrer thereto, which the

court after due consideration sustained. Of this ruling the plaintiffs complain.

It is conceded by all, that the will which has been probated was deliberately framed, and regularly subscribed and attested, in conformity with the requirements of the statute relating to wills; and in the absence of proof of a subsequent revocation, the legal presumption is, that when a will has been thus executed it continues to exist until the death of the testator. (2 Greenl. on Evidence, § 680.) The will in this case is attacked upon the ground of revocation only. The manner of revoking a will is prescribed by statute, and is as follows:

"A will shall be revoked by the testator tearing, canceling, obliterating or destroying the same, with the intention of revoking it, by the testator himself, or by some person in his presence, or by his direction, or by some other will or codicil in writing, executed as prescribed by this act, or by some other writing signed, attested and subscribed in the manner provided by this act for the making of a will." (Comp. Laws of 1879, ch. 117, § 37.)

The plaintiffs claiming that the will in contest has been revoked and superseded by a later one, it is incumbent upon them, under the provisions of the statute last quoted, to prove by competent testimony that the instrument of a later date, purporting to be a will and to have the effect of revoking an earlier one admitted to be valid, was executed with all the formality and solemnity prescribed by the statute in the making of a will. They must first show the existence of such an instrument; that it was made in writing by the testator when he was of sound mind and memory; that it was signed by him at the end thereof, or by some person in his presence, and by his express direction, and attested and subscribed in his presence by at least two competent witnesses who saw the testator subscribe or heard him acknowledge the same; and it must also appear that such instrument either in express terms revoked the former will, or that its provisions, in devising the property, were so far inconsistent with the earlier will that it would operate as a revocation. Have the plaintiffs offered

such proof? It was determined by the court below that they had not, and a careful examination of the testimony in the record convinces us that the court rightly decided that there was not sufficient testimony to impeach the validity of the earlier will. There is no testimony offered showing when the alleged later will was made, by whom it was drawn, whether it was regularly signed by the testator, nor that it was subscribed in the presence of attesting witnesses. No witness is offered who claims to have seen such a will, nor does anyone assume to have personal knowledge of what its provisions were. The testimony that was offered was very vague and unsatisfactory.

Mary Caeman, one of the plaintiffs, testifies that in 1877, and just before her father and mother started upon a trip to Europe, she was handed a large sealed envelope by her father, which he said contained a will. He directed her that it must not be torn open, but if they failed to return from Europe, it must be sent to Olathe, the county seat, but she never saw it opened, nor had she any personal knowledge of its contents. She also stated that she had seen the same envelope on two subsequent occasions, in a drawer of a bureau in her father's house, where deeds and other like papers were kept, the last time being in 1880. The paper, or whatever it may have been, was therefore under the control and immediate possession of the deceased. This envelope, for aught that appears in the testimony, may have contained the will made in 1874. The other plaintiff, Lucy Jackson, was present at this time and saw the envelope handed by her father to Mary, and gave like testimony. Mary also testified that after the death of her father, her mother admitted in the presence of father Weikman, the parish priest, that there were other wills made by the deceased. The priest was called as a witness, and testified that he heard this conversation, and heard Mrs. Van Harke state that there were more wills than one, and when he advised them that the last will was the true one she replied, " I have put in the last one and no other." There was testimony given by other witnesses to the effect that Mrs. Van Harke had admitted that there were other wills than the one probated. One witness

22—33 KAS.

testified that the widow admitted having burned one of the wills made by the decedent, but none of the admissions go to the extent that there was, at the time of the testator's death, a duly-executed will of a later date than the one probated.

Plaintiffs undertook to supplement this testimony with statements made by the testator during his lifetime and after the date when the subsequent will is alleged to have been made. This testimony, with some we have already adverted to, was clearly incompetent, and is not entitled to any weight in the determination of the issue in this case.

A wide range of inquiry is given in a case where the validity of the will is challenged on the ground that the testator is not of sound mind, and also where it is claimed that the will was procured by any undue influence involving the mental condition of the testator at the time the will was executed. In such cases the declarations of the testator, made at or before the execution of the will, are competent evidence; but upon the question of the revocation of a will once properly executed and admitted to have been valid, a different rule obtains. The declarations of the testator in such a case are not competent testimony, unless they accompany the act by which the will is revoked, and they must be at or so near the time as to become a part of the *res gestæ.* All other declarations are mere hearsay, and are not admissible to impeach the will. (*Mooney v. Olsen,* 22 Kas. 69; *Waterman v. Whitney,* 11 N. Y. 157; *Jackson v. Miffin,* 2 Johns. 31; *Stevens v. Van Cleve,* 4 Wash. C. C. 365; *Hayes v. West,* 37 Ind. 121.)

In *Mooney v. Olsen,* supra, the court says that—

"It is sometimes broadly stated that the declarations of a testator, whether prior or subsequent to the execution of the will, are inadmissible for the purpose of impeaching it. In a certain sense this is doubtless true. As a mere matter of impeaching the will, they are hearsay, and inadmissible. They are not like statements of an ancestor in derogation of title or limitation of estate, which, being declarations against interest, are admissible against the heir, for there is no adverse interest in a devisor against the will, or the devisee. They are more like declarations of a grantor, after grant in limitation of his grant,

and are strictly hearsay. Thus, if a testator, after executing a will, should say that the will was forced from him, or that it was executed against his will and through undue influence, such statement of itself would be hearsay, and inadmissible."

The declarations of the testator in the record, and which form no part of the *res gestœ*, are not very important, and must therefore be excluded from consideration. Neither can we consider any of the testimony offered by plaintiffs in their own behalf, to which objection was made, of communications had personally between the decedent and themselves concerning the will. (Comp. Laws of 1879, ch. 80, § 322; *Rich v. Bowker*, 25 Kas. 7.)

It is contended by counsel for plaintiffs, in explanation of their failure to show the contents of a later will which they claim revoked the one probated, that in cases where a later will has been destroyed or suppressed by some one interested against it, the presumption is that the second one contained provisions inconsistent with the first, and effectually revoked it. Before any such presumption can be indulged in, it must satisfactorily appear that a later will actually existed at the testator's death, and there must be evidence of spoliation by some of the parties claiming under the former will.

Looking at the testimony in this case in the light most favorable to the plaintiffs, rejecting that which is unfavorable to them, we think there was not sufficient testimony to show the existence of a later will, or any revoking instrument, at the time of the testator's death; and before plaintiffs were entitled to show by parol the contents of any revoking instrument, they must not only show its existence, but also a spoliation thereof, or that a diligent, exhaustive and fruitless search has been made for such instrument.

We think the evidence offered by plaintiffs clearly failed to prove the material issues in the case, and that the court properly sustained the demurrer thereto. Its judgment must therefore be affirmed.

. All the Justices concurring.