No. 30,250.

CORA B. HILL, *Appellant*, v. ARTHUR T. KENNEDY et al., *Appellees*.

(7 P. 2d 88.)

Opinion filed January 30, 1932.

*W. T. Roche* and *C. Vincent Jones*, both of Clay Center, for the appellant.

*William M. Beall* and *Oscar E. Peterson*, both of Clay Center, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The appeal is from the decision of the district court in an action the chief purpose of which was to determine whether the will of a testatrix which the probate court had admitted to probate had been revoked by a subsequent will which had been destroyed. Title to and right to possession of real estate depended on the decision.

George W. Kennedy died leaving a will containing, among others, the following provision:

"To my wife, Melinda R. Kennedy, to her and her heirs forever, I give, devise and bequeath the following-described real estate situated in Clay county, Kansas, to wit: [description]."

The will was probated, the widow elected to take under the will, and the estate was settled. The testator's heirs, besides his widow, were Cora B. Hill, Arthur T. Kennedy, Earl S. Kennedy, George W. Kennedy and Florence Bio, a child of the testator by a former wife.

Melinda R. Kennedy remarried, her second husband, whose name was Allen, died before she did, and her death occurred in March, 1929. A will which she made in 1913 was probated, and an executor was appointed. A will was then discovered which she made in 1915 and which she had deposited with the probate court. The will of 1915 was duly executed and attested, was admitted to probate, and an executor was appointed. This will bequeathed to Cora B. Hill

the sum of one dollar, and devised the real estate to Arthur, Earl and George Kennedy.

Cora B. Hill appealed to the district court from the order admitting the will of 1915 to probate. She also commenced an action in the district court against the devisees of Melinda R. Allen, and the executor, to contest the will. Plaintiff claimed that Melinda R. Allen took less than a fee in the land devised to her by George W. Kennedy, and under a proper construction of George W. Kennedy's will plaintiff took a one-fourth interest in the land. This contention is unsound. The will was not to Melinda R. Allen for life and at her death to her heirs in fee. The words used had no such effect, and the will gave the land to Melinda R. Allen in fee simple.

In the action the petition alleged the will of 1915 was revoked by a will made in 1922, which the testatrix destroyed, so that Melinda R. Allen died intestate, leaving plaintiff heir to one-fourth of the land. Defendants answered the petition, plaintiff replied, and the action was consolidated for trial with the appeal from the order of the probate court admitting the will of 1915 to probate. A jury was called, plaintiff introduced her evidence, defendants demurred, and the demurrer to plaintiff's evidence was sustained.

The appeal from the probate court utterly failed. Plaintiff produced no testimony whatever to impeach the probated will or the probate proceedings, and so far as the appeal was concerned the probated will stood as the last will of the testatrix. This court has already spoken on this subject:

"It is conceded by all that the will which has been probated was deliberately framed and regularly subscribed and attested, in conformity with the requirements of the statute relating to wills; and in the absence of proof of a subsequent revocation the legal presumption is that when a will has been thus executed it continues to exist until the death of the testator." (*Caeman v. Van Harke*, 33 Kan. 333, 336, 6 Pac. 620.)

In the action the will was contested on the sole ground that it had been revoked. The statute prescribes manner of revocation:

"A will shall be revoked by the testator tearing, canceling, obliterating or destroying the same with the intention of revoking it, by the testator himself, or by some person in his presence or by his direction, or by some other will or codicil in writing executed or prescribed by this act, or by some other writing signed, attested and subscribed in the manner provided by this act for the making of a will; but nothing herein contained shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." (R. S. 22-241.)

In this instance the claim was that the will had been revoked by another will. No revoking will was produced or accounted for. The petition alleged the revoking will had been destroyed, and consequently the contested will was opposed by a nonentity, which caused a woman having the will habit to die intestate. Under these circumstances it was necessary to establish the revoking will by strict proof of the acts essential to the making of a valid will. The court has already spoken on this subject:

"The plaintiffs claiming that the will in contest has been revoked and superseded by a later one, it is incumbent upon them, under the provisions of the statute last quoted [the revocation statute], to prove by competent testimony that the instrument of a later date, purporting to be a will and to have the effect of revoking an earlier one admitted to be valid, was executed with all the formality and solemnity prescribed by the statute in the making of a will." (*Caeman v. Van Harke*, 33 Kan. 333, 336.)

The statute relating to the making of a will reads:

"Every last will and testament, except such as is mentioned in section 69 of this act, shall be in writing, and signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same." (R. S. 22-202.)

As indicated, the testimony to establish a revoking will must be competent testimony. A scrivener, asserting he prepared a revoking will written and signed in his office, may not say the will was witnessed, or the will was witnessed by two witnesses. The witnessing of a will is just as essential as writing and signing at the end. It is a solemn ceremony, involving the assembling of qualified persons, who must perform prescribed acts under prescribed conditions, and the scrivener must tell what occurred and leave it to the court to draw the conclusion whether the will was witnessed. This court has spoken on this subject:

"They must first show the existence of such an instrument; that it was made in writing by the testator when he was of sound mind and memory; that it was signed by him at the end thereof, or by some person in his presence, and by his express direction and attested and subscribed in his presence by at least two competent witnesses who saw the testator subscribe or heard him acknowledge the same; and it must also appear that such instrument either in express terms revoked the former will, or that its provisions, in devising the property, were so far inconsistent with the earlier will that it would operate as a revocation." (*Caeman v. Van Harke*, 33 Kan. 333, 336.)

In this instance plaintiff sought to establish execution and attesta-

tion of a revoking will made in 1922, by the testimony of an attorney. The attorney said the testatrix came to his office, told him what she wanted in her will, he dictated a will, she signed it, and then he went with testatrix to a bank and saw her place it in her safety-deposit box. The attorney was twice asked to tell what occurred in his office, and he made no reference to the subject of witnessing the will. The questions and his answers follow:

"Q. Calling your attention to the will, will you state what you do know distinctly with reference to drawing, signing and depositing of the will? A. I had an attorney's office there. I did her business sometimes, and she came to me to have a will prepared. I inquired from her what disposition she wanted to make of it, and I reduced it to writing.

"Q. Now, I am going to ask you if you will state what you know and did concerning the will of Melinda R. Allen to which you have heretofore referred. A. I have known Melinda R. Allen for a number of years; while I was in Clay Center, Kan., I did some of her business; I do not know how much of her business I did, but I did transact business for her, and Mr. Roche did part of it for her. She came to me to prepare a will, and stated what she wished her will to contain, and it was prepared at my office. I went with her to the First National Bank of Clay Center and witnessed it being deposited in her safety-deposit box, . . ."

Objections to leading and suggestive questions calling for conclusions and not for facts, were properly sustained. The following testimony of the attorney did get into the record:

"Q. Was the will signed by two witnesses? A. Yes, I think so. . . . Don't remember who subscribed the will, but she signed it. . . . Don't remember whether I signed as a witness."

Later an objection was sustained to another question regarding witnessing of the will by two witnesses, and in ruling on the demurrer to evidence the court was authorized to disregard the quoted answer. The witness did not narrate what occurred. Disregarding that answer, there was no evidence at all that the will which the attorney said he wrote was duly witnessed, and considering the answer, there was no evidence the will was attested and subscribed in the presence of the testatrix by two or more competent witnesses who saw the testatrix subscribe or heard her acknowledge the will.

The attorney testified the will he drew gave the property of testatrix to the youngest son, George Kennedy. The court was at liberty to disregard the testimony because it was not the best evidence. The will was the best evidence, unless loss or destruction was proved. There was no evidence whatever of spoliation. No officer or em-

ployee of the bank was called as a witness. No member of the family of the testatrix, nor person having to do with her personal effects, nor heir, nor supposed devisee, was called as a witness. Nobody testified to any search for the will, and the sole testimony regarding loss consisted of hearsay testimony of two attorneys who said George Kennedy told them he had searched and could find no will.

"Before plaintiffs were entitled to show by parol the contents of any revoking instrument, they must not only show its existence, but also a spoliation thereof, or that a diligent, exhaustive and fruitless search has been made for such instrument." (*Caeman v. Van Harke*, 33 Kan. 333, 339.)

The result is, if there was a 1922 will there was no competent evidence it changed the devise of land in the 1915 will.

There are instances in which strict proof of full compliance with statutory provisions relating to the making of a will may not be required. Thus in *Graham v. Miller*, 125 Kan. 636, 266 Pac. 33, a person who had possession of a will refused to present it for probate, lost it, and claimed adversely to it. He had often said the will was signed by two witnesses. The will had been prepared by an experienced attorney. Under these circumstances, and to prevent the reaping of benefit from wrongful conduct, it was held a presumption might be indulged that the attorney saw to it necessary formalities were observed. There may be other instances in which strict proof may not be required, and within limits of safety some presumptions may be allowed to aid proof. We have no such case here.

We have here a will of the testatrix, in existence at her death in the depositary provided by law, which had been proved to be a valid and effective will in every particular, and which the law regarded as her last will. To revoke it by will it was necessary that a later revoking will, valid and effective in every particular, should be established with the certainty which would entitle it to probate. This included proof of the indispensable ceremony of witnessing; and to destroy the known will the various constituents of the ceremony may not be "presumed" from the fact that a competent lawyer supervised preparation of a later signed writing, neither produced nor accounted for, designed as a will, and placed in a safety-deposit box. This is precisely the subject dealt with in the opinion in the case of *Caeman v. Van Harke*, supra, and the court holds the principles there announced are applicable to the facts of this case.

Plaintiff contends her action was one of ejectment, she was en-

titled to trial by jury, and the evidence she produced should have been submitted to the jury. So far as the ejectment feature of the case was concerned, there was nothing to submit to a jury until the 1915 will was disposed of by contest. The contest feature of the case was triable by the court, and in ruling on the demurrer to evidence the court was authorized to proceed as if the jury sat in an advisory capacity only.

The judgment of the district court is affirmed.