No. 35,886

In re Estate of G. F. Grattan, Deceased (BERNADINE GRATTAN, *Appellant,* v. BETHEL COLLEGE, BETHANY COLLEGE, McPHERSON COLLEGE and E. F. PIHLBLAD, Executor of the Estate of G. F. Grattan, Deceased, *Appellees*).

(138 P. 2d 497)

Opinion filed June 12, 1943.

*D. C. Martindell,* of Hutchinson, argued the cause, and *W. D. P. Carey, Wesley E. Brown* and *Edward B. Brabets,* all of Hutchinson, were on the briefs for the appellant.

*J. A. Cassler, George R. Lehmberg,* both of McPherson, and *E. R. Sloan,* of Topeka, argued the cause, and *Paul A. Lackie, J. R. Rhoades,* both of Mc-Pherson, *W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from a judgment and decision of the district court of McPherson county, Kansas, on a motion to determine a question of law in advance of trial.

The facts required for a proper determination of the legal question involved may be stated briefly: G. F. Grattan died a resident of McPherson, Kan., on August 30, 1941. He executed a written will on August 9, 1941, and he made a nuncupative will at 8 o'clock p. m. on August 27, 1941. No attempt was made by the testator to revoke the written will prior to his death unless it can be said the nuncupative will had that effect. Both wills fully complied

with the provisions of our statute authorizing their execution and no contention is made that either possessed any inherent legal infirmity.

One phase of this case has been before this court and is reported in *In re Estate of Grattan,* 155 Kan. 839, 130 P. 2d 580. Many facts, not important to our decision, can be found in the opinion in that case. Also set forth in that opinion at pages 841 and 842 are pertinent provisions of the written will, and at pages 842 and 843 thereof, *in toto,* the provisions of the nuncupative will here involved. Both wills were filed in the probate court of McPherson county, and on November 4, 1941, the probate court entered its order admitting the written will to probate and refusing to admit to probate the nuncupative will. From this decision, or at least from that part refusing to admit the nuncupative will to probate, a situation which we do not and cannot determine because there seems to be some dispute between the parties and it is not definitely disclosed by the record, Bernadine Grattan, the appellant in the instant proceeding, appealed to the district court of McPherson county. Shortly after the appeal reached that court the executor of the G. F. Grattan estate, Bethel College, Bethany College and McPherson College, the appellees herein, filed their motion to determine three questions of law under G. S. 1935, 60-2902. The district court agreed to and did pass upon one of the questions of law included in such motion but refused to pass upon the other two and they will not be hereafter referred to inasmuch as error is not predicated .upon such refusal. The question of law submitted for determination was as follows:

*"Where a testator makes, executes and declares a valid written will making disposition of all of his property, may he subsequent thereto make a nuncupative will or codicil revoking or altering such written will?"*

In due time the ruling of the trial court was stated in writing and filed as a part of the record. Its declaration of law on such question as submitted read:

". . . A nuncupative will if executed pursuant to G. S. 1941 Supplement 59-608, is valid, but such a will when executed does not revoke, alter, or change the terms of a prior written will. The terms of the nuncupative will will be carried out only so far as they do not revoke, alter or change the terms of a prior written will. Both wills are valid; the terms of each will will be carried out; however, if the terms of the nuncupative will are contradictory to the terms of the written will, then the written one will govern."

Commenting upon its purpose in making such declaration of law, and its effect when so made, the trial court in its written statement said:

"It is the opinion of the court that when the declaration of law is made that there is no purpose in making a finding as to the application of that rule of law with reference to the facts in issue, the purpose being to declare the law of the state of Kansas so far as the trial court is concerned, the application of which shall be made when, as and if the evidence is presented."

The appeal here is from the trial court's declaration of law on the question submitted. Appellant's sole assignment of error reads:

"The district court erred in its decision and judgment in determining the law question submitted in the motion to determine questions of law under section 60-2902, G. S. of Kansas, 1935."

At the outset, in the light of some of the arguments made by counsel for the respective parties, this appeal can be simplified by directing attention to the question submitted and the purport of the declaration of law announced after such question had been given consideration. In fairness to the trial court it should be stated there was no trial of this case, hence, no occasion for it to weigh testimony or interpret the legal effect of the language to be found in either of the wills herein referred to. That same fairness also requires the statement that the question submitted did not raise the issue of whether the language used in the nuncupative will revoked or altered the terms of the written will. Quite to the contrary, an examination of its language impels the conclusion that it assumed the existence of a subsequent nuncupative will which sought to revoke or alter a written will and inquired as to the effect of such an oral will upon a valid written will. Having clearly in mind the question the trial court had under consideration, what was the import of its ruling? In our opinion it amounted to a finding that where a testator makes a valid written will making disposition of all of his property such testator may not subsequently thereto make a nuncupative will revoking or altering such written will. It is true that in explanation of that conclusion it was said both the written will and the nuncupative will were valid, that the terms of each will would be carried out, that insofar as the terms of the latter were contradictory to the terms of the former the written will would govern, and that the terms of the nuncupative will would be carried out only so far as they do not revoke, alter or change the terms of a written will. However, there is nothing in that lan-

guage to justify a conclusion that the trial court was attempting to prejudge the effect the language used in the nuncupative will had on the written will or the effect the language to be found in the written will would have on the nuncupative will. This conclusion is fortified by the express declaration, hereinbefore fully quoted, that so far as the trial court was concerned the application of the law announced would be made when, as and if evidence was presented. Nor does such language justify the conclusion that the question of a revocation of a former written will by a nuncupative will was not before the court for determination. That was the precise question submitted and it was the exact question determined.

We now give our attention to the subject of whether the trial court's declaration of law on the question submitted was correct under our statute and the decisions.

The pertinent provisions of our statute relating to wills are as follows:

"Every will except an oral will as provided in section 44 [59-608], shall be in writing, and signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same." (G. S. 1941 Supp. 59-606.)

"An oral will made in the last sickness shall be valid in respect to personal property, if reduced to writing and subscribed by two competent, disinterested witnesses within thirty days after the speaking of the testamentary words, when the testator called upon some person present at the time the testamentary words were spoken to bear testimony to said disposition as his will." (G. S. 1941 Supp. 59-608.)

"Except as provided in section 46 [59-610], no will in writing shall be revoked or altered otherwise than by some other will in writing; or by some other writing of the testator declaring such revocation or alteration and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by another person in his presence by his direction." (G. S. 1941 Supp. 59-611.)

In determining the construction to be placed upon the statutory provisions just cited we have no Kansas decisions to rely upon as a precedent, for in more than eighty years of appellate review this court has not been required to pass upon the question of whether, where a testator has made a valid written will making disposition of all of his property he may subsequent to the execution thereof make a nuncupative will revoking or altering such written will. We

must, therefore, in our determination of such question rely upon the history and development of the early statutes pertaining to revocation of wills, on which ours was based, and the construction placed on them and later statutory enactments of similar character by text writers and courts of other jurisdictions.

Briefly, it can be said that originally under the ecclesiastical law and the common law a written will could be revoked by the oral declarations of a testator, the basic principle which both ecclesiastical and common law courts adopted on the subject of revocation in accordance with the testator's intention being that the intention to revoke was the essential thing, and that the form of the act of revocation was immaterial. This loose method of revocation resulted in many bold attempts to defeat wills by false testimony concerning the declaration of the testator. The bench and the bar of England were fully aware of the iniquities prevalent under such practice and as a result of their efforts there was enacted in 1676 the statute of frauds (29 Car. II, ch. 3, §§ 6, 22), which pointed out explicitly the manner in which wills should be revoked. After the enactment of this statute a written will disposing of either real estate or personal property could not be revoked by mere parol. However, under this statute there was some dissimilarity in the procedure for revocation as between wills devising real estate and wills disposing of personal property. Later the statute of Victoria (7 Wm. IV, and 1 Vic., ch. 26, § 20), enacted in 1837, which applies to realty and personalty alike, provided:

"That no will or codicil, or any 'part thereof, shall be revoked otherwise than as aforesaid, or by another will or codicil executed in manner hereinbefore required, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is hereinbefore required to be executed, or by the burning, tearing or otherwise destroying the same by the testator, or by some person in his presence and by his direction, with the intention of revoking the same."

The English statutes have molded and governed the modern statutory law of this country on the subject, with the result, that revocation is largely a matter of statutory regulation in most jurisdictions, and legislation based on the statute of frauds or on the statute of Victoria has been almost uniformly adopted throughout the United States with minor variations. Likewise, it has been uniformly held that as far as the subject of revocation is regulated by statute, such statutes are mandatory, they must be strictly construed and wills cannot be revoked in any other way than that provided by them,

and this is true regardless of a testator's intention. The basic principle behind all the formalities prescribed by all of these statutes providing for revocation of wills is that such formalities and requirements are necessary to prevent mistake, misapprehension and fraud.

What has just been related is, we believe, a brief and correct summarization of the history and development of, and the purposes and intent of, all statutes, including our own, which deal with the manner in which written wills may be revoked. To those who may desire an amplification of the subject here discussed we refer to Page on Wills (Lifetime ed.), chapter 15, and Thompson on Wills, 2d ed., chapter 10.

With specific reference to the question (and we here quote it as submitted), "Where a testator makes, executes and declares a valid written will making disposition of all of his property, may he subsequent thereto make a nuncupative will or codicil revoking or altering such written will?" we think it has been uniformly held by well-established treatises on general law and recognized text writers that a nuncupative will does not revoke, alter or change the terms of a prior written will.

In 68 C. J. 801, § 486, we find the following:

"Prior to the statute of frauds, wills could be revoked by oral declarations. In England the statute of frauds and subsequent statutes forbade oral revocation of wills, both of real and personal property, and enumerated the methods by which wills might be revoked. Similar legislation has very generally been enacted in the United States, the result of which is that wills can no longer be revoked by oral declarations."

To the same effect is 28 R. C. L. 156, § 111, wherein it is stated:

". . . A further limitation in the use of nuncupative wills is that they cannot be used to revoke a prior written will or testament. . . ."

Likewise, in 51 A. L. R. 652, 670, at the close of an extended annotation on revocation of wills, the conclusion reached by the author is to be found in the following language:

"The rule is, however, that under statutes which provide that a will may only be revoked by some other will or codicil in writing, executed with due formalities, a nuncupative will, although sufficient when standing alone to dispose of an estate, cannot take effect as a revocation of a prior formal will; . . ." (p. 670).

Various phases of the rule as announced by recognized text writers are as follows:

"Eighth, as to the repeal or alteration of a written will by a nuncupative one. This, we have seen, is expressly forbidden by the Statutes of Frauds.

And under American codes, the revocation, total or partial, of a duly excuted written will by an oral or nuncupative one is likewise prohibited." (Schouler on Wills, 5th ed., § 379.)

"Prior to the .enactment of the statute of frauds, a written will could be revoked by the oral declarations of the testator . . . Since the enactment of this statute a written will disposing of either real estate or personal property cannot be revoked by mere parol . . ." (Thompson on Wills, 2d ed., § 152.)

"The testator can revoke his written will only by complying with all the requirements of the statute as to some one of the methods of revocation approved therein. Oral declarations of revocation are wholly ineffectual under all circumstances. A nuncupative will cannot be given effect as a disposition of property covered by a previous written will, for that would be allowing the revocation of a written will by parol. . ." (Rood on Wills, 2d ed., § 326.)

"If the alleged revoking instrument is oral, or if it is not signed by testator, or if it is not signed by him in the presence of the witnesses, and the statute requires such formalities of execution, the instrument does not operate as a revocation. . . . As under the modern statutes, words alone cannot revoke a written will, it follows that a nuncupative will, even though of itself valid, cannot revoke a prior written will, except where the statute makes a special exception in its favor . . ." (Page on Wills [Lifetime ed.], § 458.)

A somewhat extended investigation discloses there are surprisingly few American cases dealing with the specific question under consideration. We have carefully examined the decisions in point and the statutes construed by the various courts in arriving at the conclusions announced therein. Without exception they hold that a written will cannot be revoked by a subsequent nuncupative will. Two exceptionally well-considered cases, construing statutes which were practically the same in form and substance as our own, are, *Devisees of M'Cune v. House and Litch, administrators,* 8 Ohio 144, 31 Am. Dec. 438, and *Estate of Hadsell,* 55 Ariz. 116, 99 P. 2d 93. Other cases, dealing with statutes somewhat different in form and substance but insufficient to change the fundamental reasoning responsible for the conclusion therein announced are *Brooks and Others v. Chappell,* 34 Wis. 405; *Kennedy v. Upshaw and Cox,* 64 Tex. 411; *Limbach v. Limbach,* 214 Ill. App. 64, affirmed 290 Ill. 95, 124 N. E. 860; *Allen and Others v. Huff and Others,* (Tenn.) I Yerger 404.

Appellant contends that the authorities here cited all have to do with the revocation of a written will by a nuncupative will the terms of which revoke such written will. In this she is correct. But as we have heretofore noted, that was included in the question of law submitted for determination. Hence, such decisions are all applicable.

We have no difficulty in concluding that they are also applicable to a situation where the terms of the nuncupative will alter the written will. G. S. 1941 Supp. 59-611 provides "no will in writing shall be revoked *or altered*" (emphasis supplied). The words to which we have supplied emphasis do not appear in the more ancient statutes to which we have referred and to some of those considered by the courts in the decisions here cited. Nevertheless, the legislature had power to make that addition, and since it saw fit to do so the reasoning which impels the conclusion that a nuncupative will cannot revoke a written will compels a similar conclusion with respect to a nuncupative will which alters a written one.

The appellant insists that the determination of the instant question depends upon certain well-grounded rules of statutory construction. She cites those rules and strenuously contends that inasmuch as the provisions of our statute providing for the execution of written and nuncupative wills and the revocation of written wills are inconsistent they should be applied. We have no quarrel with the rules enunciated by appellant. They have been fortified throughout the years by a long line of well-considered decisions. The difficulty we have is in concluding they are pertinent to the instant situation. There is no inconsistency in these statutes. Under them a testator may make a valid written will. He may make a valid nuncupative will. If he has made a written will disposing of his real estate and a portion of his personalty he may thereafter make a valid nuncupative will disposing of such of his personalty as is not disposed of by the terms of the written will. But, if he has made a valid written will disposing of all his property, both real and personal, then he must take notice of the provisions of G. S. 1941 Supp. 59-611 providing for the way in which a written will can be revoked or altered and comply therewith. If he does not see fit to do so his property is disposed of under the terms of the written will irrespective of the language used by him in a subsequent nuncupative will. Any other conclusion would result in a revocation or alteration of the terms of a written will and violate the positive and express provisions of the statute.

In our determination of this question we have not been unmindful of appellant's contention that the statute providing for revocation is a general statute whereas the one providing for the execution of a nuncupative will is special. We believe that the provisions of our statute pertaining to wills generally are all general statutes as

that term has been defined in our decisions. Even if we should concede—which we do not—that there is any foundation for this contention we believe appellant's argument would fall of its own weight. G. S. 1941 Supp. 59-606 deals generally with the execution of written wills. G. S. 1941 Supp. 59-608 deals generally with the making of nuncupative wills. G. S. 1941 Supp. 59-611 has to do with the manner in which a written will may be revoked. If there is anything special about either of these statutes, and our definition of a special statute could be stretched to justify a finding that one of these three provisions was special and the two others general, it seems certain we would be forced to conclude that G. S. 1941 Supp. 59-611 was more special than either G. S. 1941 Supp. 59-606 or 59-608, because it deals specifically with the subject of how a written will may be revoked or altered.

Another contention advanced by appellant is that a nuncupative will when reduced to writing and subscribed by the required number of witnesses becomes a valid written will or codicil of the testator with respect to personal property. The difficulty with this argument is that G. S. 1941 Supp. 59-606 provides that every will except an oral will shall be in writing and signed at the end thereof by the party making the same or by some other person in his presence. In *Osborne v. Atkinson,* 77 Kan. 435, 439, 94 Pac. 796, we said:

". . . A written will must be the act of the testator, although another may pen the words or otherwise assist him in consummating the act. It must be 'signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction.' (Gen. Stat. 1901, § 7938.) . . . "

A nuncupative will is not a will in writing. Nor can it be said to be a codicil to a written will. The word "will" includes codicils.

We have herein determined all questions properly raised by the appeal. A number of other questions have been suggested by both parties, but they do not come within the scope of appellate review in this case and must be determined if, as and when they are presented to the trial court.

We find no error in the declaration of law announced by the trial court and the judgment is affirmed.