No. 36,082

In re Estate of May Rinker, Deceased. (FRANK E. DAILY et al., *Appellants,* v. W. T. MOORE, as Executor, etc., et al., *Appellees.*)

(147 P. 2d 740)

Opinion filed April 8, 1944.

*Robert C. Mayse,* of Ashland, and *Carl Van Riper,* of Dodge City, were on the briefs for the appellants.

*Floyd N. Cossman, J. V. Severe,* both of Ashland, *E. C. Minner,* of Dodge City, *Horace H. Rich,* of Coldwater, *John E. Rinker,* of Denver, Colo., and *Purley Rinker,* of Centerville, Iowa, were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from a judgment of the district court of Clark county affirming the judgment of the probate court of that county in admitting to probate a certain instrument as the last will and testament of May Rinker, deceased.

May Rinker, the decedent, was a widow who died on September 17, 1942, a resident of Clark county. She had no children and her heirs at law were her two brothers Charles B. Daily and Frank E. Daily, the appellants in this action and her sister, Lizzie Moore.

On October 26, 1942, an instrument dated March 8, 1937, was admitted to probate as the decedent's last will and testament. Throughout the entire proceedings the appellants' contention has been that such will, which they concede was executed in due form, had been revoked by the decedent and that she died intestate. The basis of their claim is that revocation of the original instrument resulted from, (1) marks of cancellation and obliteration appearing upon its face, (2) words of revocation placed thereon by the decedent, and (3) the execution of a later will.

At the trial the only witnesses who testified were those produced by appellees.  Pertinent facts applicable to the situation are, therefore, not in dispute.  The trial court made findings of fact which in themselves tell most of the story.  For that reason and because only two of them are challenged by appellants as not supported by the evidence they will, except for certain narrative facts heretofore related, be set forth in this opinion *in toto*.  They are as follows:

"2. The Will offered for probate was duly executed by May Rinker on March 8, 1937, and witnessed by H. R. Daigh and Lela A. Floyd.

"3. In 1941, May Rinker went to the office of Lela A. Floyd in Ashland, Kansas, and had with her the will, which had been executed by her on March 8, 1937.  At that time she told Miss Floyd that one of the Rinkers, whom she had mentioned in the fourth paragraph of the Will had passed away, and by reason of her death she was making some changes in the provisions concerning the Rinkers, and asked Miss Floyd to re-write her Will.  She went ahead and gave Miss Floyd the information as to how she wanted to re-write the Will.  The pencil marks drawn through and across the fourth paragraph of the Will were made by May Rinker at the time she was instructing Miss Floyd as to how she wanted the Will re-written.  About a half a day was spent in re-writing the instrument.

"May Rinker requested Lela A. Floyd and some other person who was then in the office to witness her execution of it, and May Rinker then signed the instrument in their presence, and Lela A. Floyd and the other person in the office, signed as witnesses in her presence, at her request, and in the presence of each other.

"Upon the signing of the instrument, May Rinker wrote with ink upon the right-hand margin of the first page of the prior Will the words, 'null and void—later Will.'

"4. The only testimony concerning the execution of a second, or later will, was given by Lela A. Floyd and her testimony was that she could not remember who it was that was in the office and was requested by May Rinker, and joined with her in witnessing the execution of the re-written instrument.

"5. The re-written instrument and the prior Will, the one now offered for probate, together with other papers belonging to May Rinker, were left with Miss Floyd for safekeeping.

"6. They remained in her possession until some months later, when May Rinker came to the office of Miss Floyd, destroyed the re-written instrument by tearing it into small bits and throwing it into the wastepaper basket.  The Will now offered for probate, and the other papers which Miss Floyd had, remained in her possession until about August, 1942, at which time May Rinker took from Miss Floyd's office the envelope containing the papers and the offered Will.

"7. Two or three days before her death, May Rinker requested Juanita Kennett to go to her home and get some checks, that Miss Floyd was figuring on her income tax report; she told her the checks were in a dresser drawer and that a black bag was under the mattress and she was to get the papers and put them in the bag and bring them back to her.  She found the papers

in the dresser drawer and the black bag under the mattress, put the papers in the bag and took them to May Rinker at the hospital. May Rinker took one paper out and left the others in the bag and had Miss Kennett take the bag to Miss Floyd. Upon receiving the black bag at the hospital, May Rinker looked in it and said, 'That is exactly what I want.'

"8. The black bag remained in Miss Floyd's possession until after May Rinker's death, at which time it was opened and the offered Will was found therein.

"9. After May Rinker's death, Miss Floyd opened the black bag, found the offered will in it and then, for the first time, she noticed or learned that a line in ink had been drawn through the words 'null and void—later will.'

"10. The detailed contents of the re-written instrument have not been shown. Miss Floyd is the only witness who testified concerning the contents, and she stated that she did not remember well enough to state what the contents were. She did, however, testify that it was a disposition of all her property except certain properties described in deeds which she had executed and placed in her box, and which were found in her box at the time of her death.

"11. The evidence fails to disclose the contents of the so-called 'later will,' and fails to disclose whether it was in fact a valid Will; fails to disclose whether it expressly· or impliedly revoked the offered Will; and fails to show whether it was duly executed, witnessed and published.

"12. The pencil marks now appearing over and across the next-to-the-last paragraph of the offered Will, the same being the residuary clause thereof, were not on the Will at the time it was filed for probate in Clark county, Kansas.

"13. At the time May Rinker made the cross-marks and lines through and across the fourth paragraph of the offered Will, and wrote the words thereon, 'null and void—later Will,' she was deliberating upon and considering the matter of altering or changing said paragraph merely for the purpose of re-allocating among the Rinker heirs certain property therein described; but it was not her intention to revoke said 'Will nor the fourth paragraph, nor any part of said Will, and no intention nor act manifesting such intention to revoke was ever consummated."

Based on the findings of fact the trial court made the following conclusions of law:

"1. The offered Will was executed, published and witnessed according to law.

"2. The offered Will was not revoked by any subsequent Will.

"3. The words 'null and void—later Will,' written on the margin of said Will, not having been written and witnessed with the formality required by law, do not amount to a revocation of said Will, nor any part thereof.

"4. The pencil marks appearing upon and across the fourth paragraph of said Will were not made by testatrix with the intent to cancel or revoke said Will or any part thereof.

"5. The offered Will is the Last Will and Testament of May Rinker, and same should be admitted to probate."

Appellants then moved to set aside findings of fact 11 and 13 on the ground they were not supported by and were contrary to the evidence and conclusions of law 2, 3, 4 and 5 for the reason they were each contrary to the law and the evidence. They next filed a motion for new trial in which they claimed the judgment was contrary to the evidence. Later they filed a second motion for new trial on the ground of newly discovered evidence. All these motions were overruled and they then gave notice of appeal.

The principal questions raised by the appeal depend upon the construction to be placed upon the provisions of our statute providing for the manner in which wills may be revoked. The pertinent section is G. S. 1943 Supp. 59-611, which reads:

"Except as provided in section 46[59-610], no will in writing shall be revoked or altered otherwise than by some other will in writing; or by some other writing of the testator declaring such revocation or alteration and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by another person in his presence by his direction.".

Appellants' first contention is that the lead pencil markings drawn through and across the fourth paragraph of the original will by Mrs. Rinker were marks of obliteration and cancellation within the meaning of the terms "canceled" and "obliterated" as used in the statute and that they were placed there by her with the intention and for the purpose of revoking that instrument. They insist finding No. 13 to the effect such marks were not placed thereon by Mrs. Rinker with that intent and purpose is erroneous and that it should have been set aside on their motion. We have examined the record and find ample evidence on which the trial court could base such finding. True it might have found the markings were made with the intention of revoking the will but it did not see fit to do so. This court has repeatedly held that where there is ample evidence to support a finding of the trial court it is conclusive on appeal even though there is some evidence to the contrary. (See *Huston v. Tower*, 126 Kan. 527, 268 Pac. 839; *Farney v. Hauser*, 109 Kan. 75, 198 Pac. 178, and *Brown v. Brown*, 146 Kan. 7, 11, 68 P. 2d 1105.) Appellants point to *In re Estate of Kemper*, 157 Kan. 727, 145 P. 2d 103, and urge it is the responsibility of the appellate court to review and decide for itself what the evidence established, substantially as we would in an original case. We so held in that case on the view the trial in the court below was upon written evidence, documentary

in character and in the form of depositions and transcripts. The point is not well taken. The instant case does not fall within the rule just quoted. Parol testimony as well as written evidence was introduced and considered by the trial court. Under such conditions where a question is raised that the findings of fact are not supported by or are contrary to the evidence, this court merely examines the evidence to ascertain if there is substantial competent evidence to support them and in doing so it will not review the evidence for the purpose of determining its weight and precise preponderance. (*Adams v. Morgan*, 142 Kan. 865, 52 P. 2d 643; *Stanley v. Stanley*, 131 Kan. 71, 289 Pac. 406; *Farney v. Hauser*, supra, and *Brown v. Brown*, supra.) Since finding 13 was supported by substantial competent evidence it fixed the status of the markings in the fourth paragraph of the will and appellants cannot now be heard to say they revoked that instrument.

The same holds true of the words "Null and void—later will" as they appear upon the original instrument assuming but not conceding the soundness of appellants' suggestion they might have been regarded by the trial court as demonstrative of an intention on the part of the testatrix to effect its revocation by marks of cancellation and obliteration.

In reaching the conclusion just announced we are not unmindful of our decision in *In re Estate of Kemper*, supra, which appellants cite as authority for their position, nor do we wish to detract from the force and effect of the legal propositions there stated and discussed. The factual situation there so far as marks of cancellation and obliteration are concerned, although in our judgment more pronounced and convincing, may with some justification be compared to that of the case at bar. It is at that point the analogy ceases. There, because of a situation heretofore related, it was our province to determine the facts and apply the law—try controverted issues *de novo*, here, it was the duty of the trial court to act as the trier of the facts and conclude from the evidence what those facts disclosed, subject, of course, to the right of appellate review for a determination of the question of whether there was substantial competent evidence to support its conclusions. It is for this reason—and others which we will not labor might be mentioned—our decision in the Kemper case cannot be said to be a criterion determinative of the rights of the parties in the instant action.

It is next contended that the will admitted to probate was revoked

by another will in writing, namely, the instrument signed by Mrs. Rinker in 1941, in the office of Lela Floyd. Preliminary to our consideration of the evidence with respect to the execution and contents of this instrument and the effect its execution had upon the probated will it may be well to give our attention to our decisions dealing with the question of when and under what circumstances "some other will in writing" as referred to in G. S. 1943 Supp. 59-611 revokes a former will which has been executed with due formality and is conceded to be in force and effect at the time the subsequent instrument is executed.

At the outset certain fundamental principles well established by our decisions dealing with the construction of wills generally should be noted. They are summarized in *Zabel v. Stewart,* 153 Kan. 272, 276, 109 P. 2d 177. In the opinion in that case it was said:

"It is settled in this state that the fundamental rule for construing a will is that the intention of the testator is to be gathered from the instrument as a whole, and that intention must prevail if it is consistent with the rules of law. (See *Johnson v. Muller,* 149 Kan. 128, 86 P. 2d 569 and cases cited.) Generally the will should be upheld where possible (*Klingman v. Gilbert,* 90 Kan. 545, 135 Pac. 682); should be construed to avoid intestacy, if possible (*Johnson v. White,* 76 Kan. 159, 90 Pac. 810), the supreme test being to determine the actual intention of the testator (*Thornberry v. Fletcher,* 91 Kan. 744, 139 Pac. 391), although it has been said there is no occasion for employing rules of judicial construction where the intention is expressed clearly and unequivocally in the will (*National Life Ins. Co. v. Watson,* 141 Kan. 903, 905, 44 P. 2d 269). Many other cases may be found, but those cited are illustrative of the rules stated."

And reaffirmed in *In re Estate of Schnack,* 155 Kan. 861, 866, 130 P. 2d 591, where the above quotation was copied verbatim.

Directing our attention to the specific question under consideration we note that portion of finding No. 11 stating the evidence fails to disclose the contents of the later will, fails to disclose whether it was in fact a valid will, and fails to disclose whether it expressly or impliedly revoked the offered will. It is not claimed the contents of the second instrument were known to any one but Mrs. Rinker and to the attesting witnesses thereto. It is conceded it was destroyed by Mrs. Rinker, hence appellants were obliged to prove its contents and affirmatively establish it revoked the original. With that question in mind we have carefully examined the record, assuming facts related in the unchallenged findings. At the trial the evidence consisted of the testimony of Lela A. Floyd, one of the

attesting witnesses. On this phase of the subject the record discloses the following:

"Q. Are you able to state what was in that re-written instrument? A. No, sir.

"Q. Well, in substance do you remember anything that was in it, without trying to quote it? A. In substance, yes.

"Q. What do you recall as to the substance of it? A. Well, as to the paragraph that the markings are on, it was very similar aside from the fact that there was some differences in the portions, or amounts, that went to the Rinkers.

"That was changed some.

"I do not remember what difference was stated and do not remember anything else that was in it. In some respects it was similar to the former will. She dictated it to me and I wrote it where she dictated it. She said she had acted from this point to this point. I do not recall whether or not there was a residuary clause in it or not. I do not remember whether or not there were any changes in the disposition of property, other than the paragraph to the Rinkers.

"Q. She did, however, make some disposition of her property in that instrument? A. Yes, sir.

"Q. But you do not remember what it was. A. No, sir. I do not.

. . . . . . . . . . . . . .

"Q. Miss Floyd, do you remember whether Mrs. Rinker undertook to dispose of all her property in this so-called second will? A. No, she didn't.

. . . . . . . . . . . . .

"Q. Do you know of any particular piece of property not disposed of by that will? A. Well, she had some deeds, which she had written, which were in her box at the time of her death that wasn't disposed of by the will.

"Q. That is what you meant when you answered Mr. Minner's question, that the will didn't dispose of all her property? A. Yes, sir."

It will be recalled that after the trial a second motion for new trial was filed on the ground of newly discovered evidence. For our own purposes we relate portions of the testimony of the newly found witness, one Myrtle Kennett, at this point, notwithstanding it had no bearing upon the propriety of the trial court's ruling on the motion to set aside finding No. 11. Her testimony insofar as it related to the contents of the instrument can be summarized as follows: At the request of Miss Floyd she witnessed a paper which she remembered as a will by signing it after Mrs. Rinker signed it. She did not read the instrument, no one told her what was in it and she could give no information whatsoever regarding its contents.

An analysis of all of the above quoted testimony not only fails to disclose any evidence as to the contents of the second instrument but affirmatively discloses the witnesses did not know its contents

or that it was valid as a will. True enough, there is a suggestion in the testimony, from which an inference might possibly be drawn, that the only property undisposed of by its terms was that covered by some undelivered deeds but on the other hand there was positive testimony Mrs. Rinker did not dispose of all of it. In that situation under the rule announced in the cases heretofore referred to, the finding of the court to the effect the evidence failed to disclose whether such instrument expressly or impliedly revoked the offered will is conclusive on appeal. It follows all portions of finding No. 11 just referred to were proper and must stand.

For reasons to be later disclosed, and because of the additional testimony offered on the motion for new trial, we will pass without further discussion the objection to that portion of the finding stating the evidence fails to show whether the instrument was duly executed, witnessed and published.

Giving force and effect to the findings as herein indicated what, under the decisions, must we conclude was the effect of the second will on the original instrument? In our judgment our own decisions have determined the question.

In the early case of *Caeman v. Van Harke*, 33 Kan. 333, 6 Pac. 620, the purpose of the proceeding was to contest the validity of a will which had been admitted to probate, and to have it canceled and set aside on the ground it had been revoked by a subsequent will. In discussing what the plaintiff must prove in order to establish her contention, the opinion states:

". . . and it must also appear that such instrument either in express terms revoked the former will, or that its provisions, in devising the property, were so far inconsistent with the earlier will that it would operate as a revocation. Have the plaintiffs offered such proof? It was determined by the court below that they had not, and a careful examination of the testimony in the record convinces us that the court rightly decided that there was not sufficient testimony to impeach the validity of the earlier will. There is no testimony offered showing when the alleged later will was made, by whom it was drawn, whether it was regularly signed by the testator, nor that it was subscribed in the presence of attesting witnesses. No witness is offered who claims to have seen such a will, nor does anyone assume to have personal knowledge of what its provisions were. The testimony that was offered was very vague and unsatisfactory. . . ." (p. 336.)

Later in *Hill v. Kennedy*, 134 Kan. 560, 7 P. 2d 88, we said:

"In this instance the claim was that the will had been revoked by another will. No revoking will was produced or accounted for. The petition alleged the revoking will had been destroyed, and consequently the contested will was

opposed by a nonentity, which caused a woman having the will habit to die intestate. Under these circumstances it was necessary to establish the revoking will by strict proof of the acts essential to the making of a valid will. The court has already spoken on this subject: . . . We have here a will of the testatrix, in existence at her death in the depositary provided by law, which had been proved to be a valid and effective will in every particular, and which the law regarded as her last will. To revoke it by will it was necessary that a later revoking will, valid and effective in every particular, should be established with the certainty which would entitle it to probate. . . ." (pp. 562, 564.)

Still later in *Mann v. Haines,* 146 Kan. 988, 73 P. 2d 1066, the issue was whether a subsequent will which had been destroyed had the effect of revoking a former one which had been admitted to probate. The plaintiff claimed the probated will was revoked when the testatrix signed the later instrument and when it was attested and subscribed by the witness. Such is the effect of the claim made by appellants here. In that case it was held: .

"G. S. 1935, 22-241 [now G. S. 1943 Supp. 59-611], construed and held: (1) it designates the various methods or means by which a will may be revoked; (2) one of the methods provided is the execution of some other writing signed, attested and subscribed in the manner provided for the making of a will; (3) in order for such writing to revoke a will it is insufficient that it merely be executed as therein stated, but it is necessary that its terms and provisions be shown to revoke the will by express terms or by terms inconsistent therewith; (4) the burden of showing such revocation is upon the party asserting the revocation." (Syl. ¶ 1.)

And said:

"A will may consist of any number of instruments. (*Derr v. Derr,* 123 Kan. 681, 687, 256 Pac. 800.) G. S. 1935, 22-241 [now 1943 Supp. 59-611], merely designates the various methods or manners in which a will may be revoked. One of them is by means of a subsequent will. Whether such later will in fact revokes a previous will depends upon its terms and provisions. *In order for a will to work a revocation of a former will it must appear the later revoked the former by express terms or that its provisions are so far inconsistent with the former as to make it impossible for the two instruments to stand together.* To the extent they cannot stand together the latter, of course, operates as a revocation of the former, but not otherwise. These principles are not only firmly established in this jurisdiction, but almost universally. (*Caeman v. Van Harke,* 33 Kan. 333, 6 Pac. 620; *Derr v. Derr,* supra; *Hill v. Kennedy,* 134 Kan. 560, 7 P. 2d 88.) See lengthy annotation, 51 A. L. R. 652. In the absence of proof of subsequent revocation, the probated will must stand, as the legal presumption is it continued to exist until the death of the testator. (*Caeman v. Van Harke,* and *Hill v. Kennedy,* supra.)

"Appellants, however, urge the evidence disclosed a second will and even though the second will had in fact been destroyed by the testatrix, such fact

would not revive the former will as it was never republished. The contention is based upon a literal interpretation of G. S. 1935, 22-242 [now G. S. 1943 Supp. 59-612], alone, and without regard to the proper construction of G. S. 1935, 22-241. Let us examine G. S. 1935, 22-242. It provides:

" 'If after the making of any will the testator shall duly make and execute a second will, the destruction, canceling or revocation of such second will shall not revive the first will, unless it appears by the terms of such revocation that it was his intention to revive and give effect to his first will, or unless after such destruction, canceling or revocation he shall duly republish his first will.'

"First, it should be noted this section requires not only a writing subscribed and witnessed as a will, as is the case in the former section, but in fact requires a will. *There was no competent evidence the later instrument in fact constituted a legal and valid will. That fact could have been established only by the instrument itself or by other competent evidence of its contents.* An examination of the instrument might have disclosed it could not possibly operate as a will. The only evidence on the subject is that the testatrix said it was a will. The statement, of course, did not make it a will. We really need, therefore, not pursue further appellants' last contention. A short additional statement, however, may be helpful. *It must be borne in mind a second will does not necessarily revoke a former will, and if in the instant case the second instrument had in fact constituted a will, there was no evidence it revoked the former will by express terms or by operation of law, and hence the former will was not in need of reviving by publication or otherwise, as it had always remained in full force and effect.* There is obviously no need of reviving a will the effect of which has never been disturbed. Since several instruments may constitute a will, G. S. 1935, 22-242, must be interpreted to refer to a second will which had the effect of revoking the first will entirely or in part and not to a will which was in no manner shown to be inconsistent with the first will. The burden of showing such inconsistency was on the appellants who asserted it. In this they failed." (p. 992.) (Emphasis ours.)

With findings of fact as herein set forth and which we have approved, we believe the decisions just referred to are determinative of appellants contentions. The burden was on them to establish the contents of the second will and that its terms either expressly or impliedly revoked the former one. This they failed to do.

As disclosed in the immediate preceding opinion the principles there enunciated are almost universal. We shall not attempt to cite them. Interesting and helpful cases are *Williams v. Miles,* 68 Neb. 479, 94 N. W. 705; and *In re Connery Estate,* 175 Mich. 544, 141 N. W. 615. For lengthy annotations on the subject of revocation of a will by a later will, see 51 A. L. R. 652 and 123 A. L. R. 1395.

In passing we pause to note appellants' contention the trial court erred in overruling their second motion for new trial. Briefly, we doubt if there was a sufficient showing of diligence in obtaining and

producing the new evidence adduced at the hearing on that motion. The evidence offered was cumulative. Moreover, it is apparent the evidence produced with respect to the execution, attestation and publication of the record would not have changed the result had it been available on the original or a later trial. Under such circumstances it cannot be said the trial court erred in overruling the motion.

Finally it is argued that the words "null and void—later will" when written upon the original will were sufficient to revoke it. The statute provides for revocation—"by some other writing of the testator declaring such revocation . . . executed with the same formalities with which the will itself was required by law to be executed," not some other writing on the original instrument executed without that formality.

In *In re Estate of Grattan*, 157 Kan. 116, 120, 138 P. 2d 497, we said:

". . . Likewise, it has been uniformly held that as far as the subject of revocation is regulated by statute, such statutes are mandatory, they must be strictly pursued and wills cannot be revoked in any other way than that provided by them, and this is true regardless of a testator's intention." (p. 120.)

Both the language of our statute and our decisions preclude persons who desire to revoke wills executed with the formality and solemnity provided for by law from accomplishing that purpose unless they can show strict compliance with the provisions of the statute fixing the manner in which revocation may be accomplished.

Other arguments advanced by appellants are interesting but their determination would not affect the result and it would serve no useful purpose to prolong this opinion by discussing them. Having concluded there was no revocation of the original will by cancellation, by execution of another will or by another instrument it follows the original will was valid and in full force and effect when offered for probate. The conclusions of law made by the trial court were warranted under both the law and the evidence, and its judgment admitting such instrument to probate is affirmed.

HARVEY, J., not participating.