No. 103,155

JOHN D. BOUCEK, *Appellant*, v. RICHARD BOUCEK and DIANA
PECK, as Executors of the ESTATE OF BERNICE E. BOUCEK,
Deceased, Sued Individually and as Trustee of the CLARENCE
F. and BERNICE E. BOUCEK Irrevocable Trust, Dated July 15,
1996; and as Successor Co-Trustees of the Revocable Inter Vivos
Trust of BERNICE E. BOUCEK, Dated August 3, 2004, *Appellees*.

(305 P.3d 597)

Opinion filed July 12, 2013.

*David R. Klaassen*, of Marquette, argued the cause, and *Heather R. McCollum*,
of the same firm, and *Larry G. Michel* and *Karen Q. Couch*, of Kennedy Berkley

Yarnevich & Williamson, Chartered, of Salina, were with him on the briefs for appellant.

*Robert A. Martin*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

BEIER, J.: This trust and estate case began with family intrigue, betrayal, and revenge.

The plaintiff is John D. Boucek; the defendants are his brother and sister, Richard Boucek and Diana Peck. John filed this suit in 2006 against his mother, Bernice Boucek, both individually and in her capacity as trustee for two trusts. Bernice has since died, and Richard and Diana have stepped into her shoes in their capacities as executors for her estate and as successor cotrustees of a 2004 trust.

The district court judge granted summary judgment to Richard and Diana based on res judicata and collateral estoppel.

A panel of our Court of Appeals affirmed the district court judgment as right for the wrong reason. The panel rejected John's argument that Bernice's 2004 actions—designed to disinherit him—constituted a breach of her 1989 joint, mutual, and contractual will (1989 Will) made with the parties' father, Clarence "Frank" Boucek. It instead concluded that an irrevocable 1996 trust (1996 Trust) created by Bernice and Frank implicitly revoked or modified the 1989 Will and that a lack of clarity about the identity of the property owned by the 1996 Trust required a limited remand to the district court for factual findings. The panel also rejected a statute of limitations defense advanced by Richard and Diana on the breach of contract claim, and it upheld the district judge's grant of summary judgment against John on his claims for breach of trust regarding the 1996 Trust and constructive fraud. *Boucek v. Boucek*, No. 103,155, 2011 WL 2175969 (Kan. App. 2011) (unpublished opinion).

This court granted John's petition for review on all issues, and it granted Richard and Diana's cross-petition for review on their affirmative defenses, including the statutes of limitations applicable to John's three causes of action. For the reasons we explain below,

we affirm the Court of Appeals decision in part and reverse it in part. We reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion. On the record before us and under the governing law, Richard and Diana are not entitled to summary judgment on any of John's three claims.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1989, Bernice and Frank executed a joint, mutual, and con-tractual will in which they agreed that, after the death of the second of them, all of their property should be distributed to their four children, including John, in equal shares.

In 1996, after Frank learned that he had cancer, he and Bernice created and executed an irrevocable trust. The 1996 Trust instrument, like the 1989 Will, references a particular piece of real property, the homestead. The 1996 Trust's distribution provisions are largely similar to those of the 1989 Will, although there are some differences; for example, the couple's two sons are granted life estates rather than fee simple in the homestead. Ownership of the homestead, which appears to be the principal prize at stake in this litigation, was never transferred to the 1996 Trust. The record on appeal is not clear on exactly what other property was transferred to the 1996 Trust.

In 1998, Frank died. A copy of the 1989 Will was filed with Bernice's affidavit more than 6 months after Frank's death. The 1989 Will apparently was never probated.

As the century turned, familial disharmony led to John filing several lawsuits against members of his family, including Bernice, after he was excluded from the family business.

In August 2004, Bernice executed a new, revocable inter vivos trust (2004 Trust) and a new, pour-over will with the express intent to disinherit John. The 2004 Trust instrument provided that, at Bernice's death, all of the 2004 Trust property would be distributed to Richard, Diana, and their sister. No property was to pass to John.

On September 8, 2004, Bernice transferred substantially all of her property, including property that had been in the 1996 Trust, to the 2004 Trust.

John filed this action against Bernice on September 6, 2006. He made three claims: breach of the 1989 Will, *i.e.*, breach of contract; breach of trust regarding the 1996 Trust; and constructive fraud.

In July 2007, Bernice sought summary judgment, and the district judge denied it. The judge reasoned that facts in issue in this case were being litigated in a different action.

Bernice died in January 2008, and a will contest ensued. After trial in Ottawa County, the district judge ruled that the 1996 Trust revoked or superseded the 1989 Will; that the 1989 Will was presumptively revoked; and that the 2004 Will, not the 1989 Will, should be admitted to probate. John appealed these rulings to the Court of Appeals.

In March 2009, Richard and Diana renewed the defense motion for summary judgment in this action. The district judge granted the motion on the basis of "collateral estoppel, res judicata, claim preclusion and/or issue preclusion" applying "because possible controverted facts ha[d] previously been litigated and decided between the parties" in the will contest.

On June 18, 2010, the Court of Appeals ruled on John's appeal in the will contest, affirming the admission of the 2004 Will to probate but otherwise abrogating the findings and conclusions from district court. *In re Estate of Boucek*, No. 101,767, 2010 WL 2502879 (Kan. App. 2010) (unpublished opinion).

On John's appeal from the summary judgment granted by the district judge in this case, a panel of our Court of Appeals disagreed with the district judge's rationale and held that the earlier will contest did not bar John's claims as a matter of law. See *In re Estate of Boucek*, 2010 WL 2502879, at *1 (district judge's factual findings, rulings outside admission of 2004 Will to probate abrogated). But the panel nevertheless concluded that summary judgment was appropriately granted in favor of Richard and Diana, save a limited remand to settle the factual question of exactly which property was transferred to the 1996 Trust. *Boucek*, 2011 WL 2175969, at *2-9.

On the breach of contract claim, the panel rejected Richard and Diana's statute of limitations defense:

"Defendants also argue that John's claim is barred by the statute of limitations. But assuming the 1989 [W]ill remained in effect at all after Clarence and Bernice

signed the 1996 [T]rust, the breach of the contractual provisions did not occur until Bernice's new will was submitted for probate in 2008. See *In re Estate of Stratmann*, 248 Kan. [197,] 203[, 806 P.2d 459 (1991)] (claim for breach of contractual will to be brought against estate of party breaching that contract). Because the breach of contract claim lies against the estate of the party executing a later will inconsistent with the contractual will, the cause of action would not accrue until the death of the second party to the contractual will and the presentation of the later will rather than the contractual will for probate. The claim here was timely." *Boucek*, 2011 WL 2175969, at *8.

On the merits of the breach of contract claim, the panel upheld the district judge's summary judgment because, in its view, the 1996 Trust modified or revoked the 1989 Will. *Boucek*, 2011 WL 2175969, at *6. Bernice's actions disinheriting John in 2004 thus could not have breached her contractual obligations under the 1989 Will.

The Court of Appeals did not address Richard and Diana's statute of limitations defenses to John's breach of trust and constructive fraud claims, but it nevertheless upheld summary judgment in favor of them on those two claims. On the breach of trust claim, the panel relied on language in the 1996 Trust instrument granting broad discretion to the trustee. On the constructive fraud claim, the panel held that John had not come forward with evidence to establish the existence of a necessary "confidential relationship" between himself as beneficiary and Bernice as testator. *Boucek*, 2011 WL 2175969, at *8-9.

## DISCUSSION

Our discussion and disposition addresses each of the issues raised in John's petition for review as well as the statute of limitations and other defenses raised by Richard and Diana. We have taken the liberty, however, of some reordering and restatement of the issues for clarity of analysis.

The standard of review governing cases that arise on appeal from summary judgment is a familiar one, and it applies here:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all

facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, Syl. ¶ 1, 298 P.3d 250 (2013).

## Statutes of Limitations and Other Affirmative Defenses

We discuss Richard and Diana's arguments on the applicable statutes of limitations and other affirmative defenses first, because, if they prevail on any one of them, they may be entitled to summary judgment on one or more of John's claims for a reason other than that upon which the Court of Appeals panel relied. We do not, at this procedural juncture, review either the res judicata or collateral estoppel rationales of the district judge; because we did not grant Richard and Diana's cross-petition for review on res judicata, and neither side sought review of that portion of the Court of Appeals' opinion rejecting collateral estoppel. In short, this approach allows the Court of Appeals panel's discussion of these two doctrines to stand and to become law of the case. See *State v. Collier*, 263 Kan. 629, 631-34, 952 P.2d 1326 (1998) (argument made to, resolved by appellate court becomes law of case, generally cannot be revisited, challenged on remand, or later appealed). Neither the doctrine of res judicata nor the doctrine of collateral estoppel can be relied upon on remand.

On the statutes of limitations, Richard and Diana argue that the latest point at which the clock would have begun to run was 1999. That year, Bernice began to make conveyances of property out of the 1996 Trust without consideration. If the first of these conveyances was the triggering event, then the 5-year statute for breach of a written contract would have run in 2004. See K.S.A. 60-511. The 2-year statute of limitations for breach of trust and constructive fraud would have run in 2001. See K.S.A. 60-513(a)(3). Again, this suit was filed on September 6, 2006.

Richard and Diana's arguments are unpersuasive.

John had standing, as a beneficiary under the 1989 Will, to bring a breach of contract claim for Bernice's testamentary dispositions of property subject to the 1989 Will that were at odds with its provisions. When a party seeks to enforce a contractual obligation under a joint, mutual, and contractual will, the claim constitutes a demand against the estate. *In re Estate of Pallister*, 13 Kan. App. 2d 337, 338, 770 P.2d 494 (1989). The relevant statute of limitations is the nonclaim statute, K.S.A. 59-2239(1) (all demands against estate due within 4 months after date of publication, 30 days after actual notice). See *Nelson v. Nelson*, 288 Kan. 570, Syl. ¶ 20, 592, 205 P.3d 715 (2009) (nonclaim statute applies to third-party beneficiary's breach of contract claims; does not shorten time for tort claims, including fraud, under K.S.A. 59-2239[2]). Because suit was filed before Bernice's death in 2008, John's breach of contract claim was not time barred.

John's breach of trust and constructive fraud claims are subject to K.S.A. 60-513(a)(3), and its 2-year limitations period begins to run from the discovery of the breach or the alleged fraud. These two claims are based on Bernice's transfers of property out of the 1996 Trust, and Richard and Diana point to some evidence that John was aware of certain transfers dating back as far as 1999. The problem for them is that John is not suing on those transfers. His petition and his later arguments focus on Bernice's September 8, 2004, transfers. This means, again, that his September 6, 2006, claims were timely filed.

Richard and Diana's other affirmative defenses also cannot carry the day. See *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 389, 22 P.3d 124 (2001) (party asserting affirmative defense bears burden of proof).

When there is no statute of limitations problem, there is little room for application of the equitable doctrine of laches. See *Meneley*, 271 Kan. at 388-89 (defining laches, waiver). Richard and Diana's passing suggestion that, if a cause of action exists, the Bank of Tescott rather than John "may be the proper owner of the claim" does not qualify as an appellate argument, and any standing or assignment issue is deemed abandoned. See *Miller v. Johnson*, 295 Kan. 636, 688, 289 P.3d 1098 (2012) (issue mentioned in passing

but not argued, supported; deemed waived, abandoned); *State v. Holman*, 295 Kan. 116, 139, 284 P.3d 251 (2012) (same).

John's failure to raise his alleged interests under the 1989 Will and/or the 1996 Trust in his 2001 bankruptcy case also does not preclude this action. See, *e.g.*, 11 U.S.C. § 541(a)(1) (2000) (bankruptcy estate includes all legal, equitable interests of debtor in property as of commencement of case); *In re Smith*, 293 B.R. 786 (Bankr. D. Kan. 2003) (when cause of action had not accrued at commencement of bankruptcy case, neither cause of action nor any later recovery property of estate); *In re Estate of Burcham*, 248 Kan. 897, 907, 811 P.2d 1208 (1991) (third-party beneficiary interest in will vests when will probated).

Richard and Diana also have asserted that John waived any right to assert a claim under the 1996 Trust by arguing that his only claims arose under the 1989 Will and that the 1996 Trust was ineffective. Insofar as they are focusing on certain aspects of the breach of contract claim, they may be correct. But John's petition is clear that his breach of trust claim and constructive fraud claim are based on the transfers out of the 1996 Trust, and his argument that it did not effectively revoke or modify the contractual provisions of the 1989 Will to capture the homestead property or other specific property does not waive his ability to raise his breach of trust or constructive fraud claims for any property that was transferred from the 1996 Trust.

Finally, Richard and Diana's invocation of the doctrine of "unclean hands" does not afford them the relief they seek on John's breach of trust or constructive fraud claims either. Although John may have had knowledge of certain transfers Bernice made out of the 1996 Trust before 2004, including property transferred to John himself, this is not evidence that John's conduct was in any way deceitful or unfair. John's knowledge of or participation in these earlier transactions has nothing to do with the propriety of the September 8, 2004, transfers at the heart of the breach of trust and constructive fraud claims. Nor do any of these transfers form the basis of the controversy here. See *Goben v. Barry*, 234 Kan. 721, Syl. ¶ 3, 676 P.2d 90 (1984) (under unclean hands doctrine, court may deny relief to party whose conduct has been inequitable,

unfair, deceitful; doctrine applicable only when conduct pertains to controversy at issue).

Having studied the alternate routes to summary judgment defendants urged us to follow and upon which we accepted review, we turn now to the road the Court of Appeals panel took on each of John's claims.

*Contractual Nature of 1989 Will*

The parties agree that the 1989 Will is a joint, mutual, contractual will. See *Reznik v. McKee, Trustee*, 216 Kan. 659, 671-79, 534 P.2d 243 (1975) (setting out factors to consider in determining whether will is contractual); *In re Estate of Zahradnik*, 6 Kan. App. 2d 84, 89-91, 626 P.2d 1211 (1981) (same). In that will, Frank and Bernice "mutually agree[]" that they will leave to the survivor "all property, real and personal of the party first to die, and on the death of the survivor, leav[e] all of his or her property to our children equally, share and share alike." Article VI of the 1989 Will describes a particular parcel of property—the homestead—and specifically devises it, in fee simple, "to Richard C. Boucek and John D. Boucek, share and share alike." All other property, on the death of the survivor, "shall be divided among our children equally, share and share alike."

"[A] joint, mutual[,] and contractual will speaks to the property of each testator at the time of his or her respective death and includes all after-acquired property of the survivor unless a different intention appears from the will." *In re Estate of Jud*, 238 Kan. 268, 274, 710 P.2d 1241 (1985). "Once one of the parties to a contractual will dies and the other party accepts benefits under the will, the survivor cannot then revoke or alter the terms of the will. . . . [A]fter-acquired property passes under a contractual will unless the will provides otherwise." *Bell v. Brittain*, 19 Kan. App. 2d 1073, 1081, 880 P.2d 289 (1994), *aff'd* 257 Kan. 407, 893 P.2d 251 (1995). If a contractual will is probated after the death of the first testator, the third-party beneficiary obtains an enforceable interest at that time. See *In re Estate of Burcham*, 248 Kan. 897, Syl. ¶ 2, 901-04.

In this case, it does not appear the 1989 Will was probated after Frank's death. A copy of it was merely filed along with Bernice's

affidavit. Yet, in 2004, Bernice was still bound by any contractual provisions in the 1989 Will that had survived the creation and execution of the irrevocable 1996 Trust. See *Bell,* 19 Kan. App. 2d at 1082-83 (citing *In re Estate of Burcham,* 248 Kan. at 901-03, 909-10). To the extent John can demonstrate that Bernice's 2004 Will and 2004 Trust violated the 1989 Will's surviving provisions, he proves a breach of contract.

### Effect of Irrevocable 1996 Trust

"The legal effect of a written instrument is a question of law for the court to decide." *Galindo v. City of Coffeyville,* 256 Kan. 455, Syl. ¶ 2, 885 P.2d 1246 (1994). And whether an instrument is clear or ambiguous is a matter of law to be decided by the court. *Mobile Acres, Inc. v. Kurata,* 211 Kan. 833, 839, 508 P.2d 889 (1973).

. The same rules that apply to the construction of wills apply to trusts and most other written documents. *In re Estate of Sanders,* 261 Kan. 176, 182, 929 P.2d 153 (1996).

" 'In considering a will a court cannot begin by inferring a testator's intention and then construe the will to give effect to such intention however probable it may be, nor can it rewrite the will, in whole or in part, to conform to such presumed intention. It is the duty of a court to construe not to construct a will.' " 261 Kan. at 182 (quoting *In re Estate of Graves,* 203 Kan. 762, Syl. ¶ 4, 457 P.2d 71 [1969]).

In other words, if the language of a written instrument is clear, it should be carried out as written. *Sanders,* 261 Kan. at 182 (quoting *In re Living Trust of Huxtable,* 243 Kan. 531, 534, 757 P.2d 1286 [1988]).

As mentioned previously, contractual wills prevent the surviving spouse from escaping the obligations of his or her agreement by merely revoking or amending the will. *Reznik,* 216 Kan. at 679. But two parties to a contract, including a contractual will, can agree to rescind or modify their contract. See *Allen v. Allen,* 108 Kan. 765, 767-68, 196 Pac. 1075 (1921); see also *Idbeis v. Wichita Surgical Specialists, P.A.,* 279 Kan. 755, 774, 112 P.3d 81 (2005) (modification of contract requires mutual assent, meeting of minds). Courts do not favor revocation by implication. See *Bradshaw v. Bangley,* 194 Va. 794, 799-800, 75 S.E.2d 609 (1953). A later tes-

tamentary document that does not expressly revoke a prior will but contains inconsistent dispositions operates as revocation by implication only to the extent of the discordant provisions. See Annot., 59 A.L.R. 2d 11, §§ 7, 23 (implied revocation of will by later document); see also, e.g., *In re Estate of Pickrell*, 248 Kan. 247, 256, 806 P.2d 1007 (1991) (where conflict exists between earlier executed will and later amended inter vivos trust as to how death taxes and administration expenses are to be paid, the last instrument in time controls); *In re Estate of Rinker*, 158 Kan. 406, 415-16, 147 P.2d 740 (1944) (to revoke former will, later will must expressly revoke former will or contain provisions so inconsistent with it that it is impossible for both instruments to stand together); *Dunsworth v. Dunsworth*, 148 Kan. 347, 354-55, 81 P.2d 9 (1938) (same).

The 1996 Trust does not include language expressly revoking the 1989 Will as a whole or rescinding any of its contractual provisions. And John argues that the 1996 Trust did not do implicitly what it failed to do explicitly.

Richard and Diana, of course, take the opposite view. The Court of Appeals concluded that the 1996 Trust evidenced a mutual decision by Frank and Bernice to modify the will, stating: "The trust demonstrates clearly and unambiguously an intent to reject the 1989 [W]ill as the means of disbursing property placed in the trust. In doing so, it modifies or rescinds the 1989 [W]ill as a contract." *Boucek*, 2011 WL 2175969, at *6. And they point to evidence regarding Frank and Bernice's intent in creating the 1996 Trust: Bernice testified she understood the 1996 Trust's purpose was to protect the family farm from creditors whom the family anticipated as a result of Frank's diagnosis of and treatment for cancer at a time when he was uninsured. Bernice also said she believed the 1996 Trust "overrode" the 1989 Will. And Richard Comfort, the attorney for Frank and Bernice at the time, testified that they intended their 1996 Trust to supersede their 1989 Will.

The problem with this largely uncontroverted evidence is its irrelevance. Because there is no ambiguity in either the 1989 Will or the 1996 Trust, there is no need for testimony about intent to clarify intent or meaning. See, e.g., *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452, 827 P.2d 24 (1992) (parol evi-

dence inadmissible to contradict, alter, vary terms of written instrument unless ambiguity exists on vital point, rendering such evidence necessary to ascertain parties' intent); *In re Estate of Rinker*, 158 Kan. at 412.

At most, reading the two unambiguous written instruments together, the 1996 Trust modified the 1989 Will in certain particulars; it did not fully revoke it as a testamentary instrument nor fully rescind it as a contract. The 1996 Trust affected only the items of personal property and parcels of real property whose joint or individual ownership was transferred to it before Frank's death. On these items and parcels, and only on these items and parcels, the provisions of the 1996 Trust were inconsistent with and thus superseded the provisions of the 1989 Will by Frank's and Bernice's mutual assent. As the homestead never became part of the corpus of the irrevocable 1996 Trust, it remained—at a minimum, between July 15, 1996, and September 8, 2004—subject to the fee simple disposition recited in the 1989 Will rather than the life estate disposition recited in the 1996 Trust. To the extent it is unclear what other jointly or individually owned property was transferred to the 1996 Trust before Frank's death, we agree with the Court of Appeals panel that a limited remand to the district court would have been necessary to determine that question and thus which other items and parcels remained subject to the 1989 Will or became subject to the 1996 Trust between, at a minimum, July 15, 1996, and September 8, 2004. However, as discussed below, Bernice's September 8, 2004, actions purported to control both categories of property, *i.e.*, property subject to the joint, mutual, and contractual 1989 will as well as property subject to the irrevocable 1996 Trust. Because, as we discuss below, a remand of the entire case is necessary, the limited remand envisioned by the Court of Appeals panel need not be isolated from the other issues that require attention in the district court.

## Propriety of Summary Judgment

Having determined the effect of the 1996 Trust on the 1989 Will, we move to the question central to this appeal: Has John come forward with evidence sufficient to withstand Richard and Diana's

motion for summary judgment on his three claims? To recap on certain of the pertinent uncontroverted facts, on August 3, 2004, with the express purpose of disinheriting John, Bernice executed a new revocable inter vivos trust. The 2004 Trust was created for the sole benefit of Bernice during her life. At her death, all of the Trust property was to be distributed to all of her children except John. Also on August 3, 2004, Bernice executed a new, pour-over will. Shortly thereafter, for no consideration, Bernice transferred substantially all of her property, that is, each item and parcel subject to either the 1989 Will or the 1996 Trust, to herself as trustee of the 2004 Trust. These transfers included the homestead.

*Breach of Contract*

John has come forward with evidence to demonstrate the existence of a genuine issue of material fact on whether Bernice breached her contract with Frank, to the extent that property she transferred to her revocable 2004 Trust had previously remained subject to the joint, mutual, and contractual 1989 Will. At this juncture, for example, the homestead appears to be in this category of property, as it was never transferred to the 1996 Trust before Frank's death. Because the 1989 Will qualified as a contract as well as a testamentary instrument, Bernice was not free to remove property from its reach unilaterally, either before or after Frank's death. See *Bell*, 19 Kan. App. 2d at 1081. And, as a third-party beneficiary of the contract embodied in the 1989 Will, John may seek to enforce the Will's provisions. See *In re Estate of Burcham*, 248 Kan. 897, Syl. ¶ 2; *Bell*, 19 Kan. App. 2d at 1081-83. Bernice's actions in 2004 appear to have been contrary to the 1989 Will. John's breach of contract claim must be remanded to the district court for further proceedings.

*Breach of Trust*

This claim focuses on the other category of property belonging to Bernice, the property transferred to the 1996 Trust by mutual agreement with Frank during his lifetime. As stated above, it is unclear from the record before us exactly which items and parcels

belong in this category, but treating it as a category is sufficient for purposes of this appeal.

The Court of Appeals panel correctly noted that "[t]rust instruments will be enforced as they are written when the language is clear as to the testators' intent." *Boucek*, 2011 WL 2175969, at *8. Looking to the language of the 1996 Trust, the panel concluded that there was no breach of the 1996 Trust, as a matter of law, because it afforded Bernice, as trustee, "the right to 'handle' the trust property in [her] 'sole discretion [as she] may deem best.' " 2011 WL 2175969, at *8.

The 1996 Trust is denominated irrevocable for the benefit of Frank and Bernice as settlors and trustees. Its Section I, describing the trust property, refers to the original trust estate as that described in an attached schedule. In the record before us, there is no attached schedule. During their lifetimes, Frank and Bernice were to receive income from the trust property, and, upon either or both of them becoming incompetent or upon their deaths, the surviving or successor trustee could pay certain expenses from income or principal. After the death of the surviving trustee, the remaining trust estate is to be distributed as follows: John and Richard, in their lifetimes, are to share equally "the income and use of the profits, rents, crops and earnings" from the homestead property, which is specifically described; all other trust property is to be divided into separate equal trusts for each of Frank and Bernice's four living children or their living descendants.

The 1996 Trust instrument grants the trustees "absolute discretion" to allocate between principal and income; it waives fees; and it bestows general trustee powers, including the ability to "lease, sell, improve or otherwise handle [trust property] as they in their sole discretion may deem best."

Section IX, entitled "Transfer of Trust Property," states:

"The Trustees shall have full power and authority in their discretion, without notice to anyone, and without order of any court, to sell at private sale, to exchange under private contract, and to transfer and convey any of the Trust property and receive the consideration therefore, whether in cash or other property, a[t] such times and for such consideration as the Trustees may deem to be to the best interests of the Trust. Such sales and transfers of the Trust property by the Trus-

tees may be either for cash or upon terms as may appear in the sole discretion of the Trustees for the best interests of the Trust."

John claims Bernice breached the 1996 Trust by transferring property out of the Trust without consideration "and otherwise in violation" of the Trust. He correctly observes: "The Irrevocable Trust is by its terms 'irrevocable.' " And he argues: "Regardless of how broadly the trust defines a trustee's discretion—including 'absolute,' 'sole,' or 'uncontrolled'—such discretion must be exercised 'in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries.' "

Even if we agree with the Court of Appeals that the 1996 Trust grants broad discretion to the Trustees in handling trust property, Bernice had a fiduciary obligation to the Trust. See K.S.A. 58a-814; *Jennings v. Murdock*, 220 Kan. 182, 193-211, 553 P.2d 846 (1976); *Elward v. Elward*, 117 Kan. 458, 459, 232 Pac. 240 (1925) (trustee may not " 'so exercise[e] his discretion as to oppress the beneficiary or cause loss to the trust property' "). Even if the instrument's terms gave Bernice discretion to remove assets, with or without consideration, her discretion was to be exercised in "the best interests of the Trust." Based on the undisputed facts, drawing all reasonable inferences in John's favor, there remain genuine issues of material fact on whether Bernice's 2004 actions breached the 1996 Trust, particularly because of her admitted purpose to defeat the earlier irrevocable 1996 Trust's distribution to John. Reversal of summary judgment is compelled, and the breach of trust claim must be remanded to district court for further proceedings.

### Constructive Fraud

The Court of Appeals concluded that because there was no breach of the 1996 Trust, there could be no claim for constructive fraud. Because we have concluded that John's breach of contract and breach of trust claims survive summary judgment, so too does his constructive fraud claim. It also must be remanded to district court for further proceedings.

### CONCLUSION

The district court judge erred in granting summary judgment on

the basis of collateral estoppel. The applicable statutes of limitations do not bar plaintiff John D. Boucek's claims for breach of contract, breach of trust, and constructive fraud. The Court of Appeals panel erred in upholding judgment for defendants Richard Boucek and Diana Peck. We agree with the panel's remand order but hold that remand should be broader.

The judgment of the district court is reversed. The decision of the Court of Appeals is affirmed in part and reversed in part. The case is remanded to the district court for further proceedings.