NOT DESIGNATED FOR PUBLICATION

No. 116,726

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN K. CALVIN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed November 9, 2017. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Danielle Onions*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and SCHROEDER, JJ.

PER CURIAM: In November 2008, John K. Calvin filed a second motion for relief under K.S.A. 60-1507, raising, in part, multiple claims of ineffective assistance of counsel. Following a full evidentiary hearing, the district court denied Calvin's motion. On appeal, a panel of this court affirmed the district court's rulings on all issues except for Calvin's ineffective assistance of counsel claims. The panel remanded the case to the district court for compliance with Supreme Court Rule 183(j) (2017 Kan. S. Ct. R. 222), which requires a court to make findings of fact and conclusions of law on all issues presented. On remand, the district court adopted the State's proposed findings of fact and

conclusions of law, denying Calvin relief on each of his claims of ineffective assistance of counsel. On appeal, Calvin argues the district court erred in refusing to consider on remand his newly asserted claim of actual innocence and by denying his ineffective assistance of counsel claims.

FACTS

The facts relevant to Calvin's convictions are set forth in this court's opinion in *Calvin v. State*, No. 109,947, 2014 WL 4080155, at *1 (Kan. App. 2014) (unpublished opinion) (*Calvin III*):

"On December 12, 2002, someone killed John Coates just outside the back door of his residence. Police determined that Calvin, Melvin White, and Benjamin Russell were attempting to rob Coates when one of them shot him. The State charged Calvin, White, and Russell with attempted robbery and felony murder. During his last statement to police, Calvin admitted his part in the robbery scheme. He said he was to lure Coates to the door by offering to sell him some CDs so that, once the door was open, Russell could rob him. White and Russell entered into plea agreements. Calvin went to trial. Russell testified against Calvin, saying that Calvin was to lure Coates outside so that White, who had the gun, could rob Coates.

"Calvin's attorney laid out the theory of defense in opening and closing statements and cross-examination of the State's witnesses. Calvin's claim was that he was not aware that a robbery was going to take place. Rather, counsel submitted that Calvin was used by White and Russell to provide them physical access to Coates. Counsel argued that Calvin was innocently at the victim's house selling CDs. Counsel also contended that the investigating officers coerced Calvin into making the statement that incriminated him. Calvin did not testify at trial.

"The jury convicted Calvin of attempted robbery and first-degree felony murder. The district court sentenced Calvin to a controlling sentence of life imprisonment without the possibility of parole for 20 years."

2

On direct appeal to the Kansas Supreme Court, Calvin argued (1) the evidence was insufficient to support his conviction for felony murder, (2) the charging document was fatally defective, and (3) several of the jury instructions were erroneous. The Supreme Court affirmed Calvin's convictions. See *State v. Calvin*, 279 Kan. 193, 199-208, 105 P.3d 710 (2005) (*Calvin I*).

In March 2006, Calvin filed a motion for relief under K.S.A. 60-1507. In the motion, Calvin argued that his trial counsel was ineffective for failing to (1) mount any defense, (2) interview or call witnesses, (3) file a motion to suppress his statements to law enforcement, (4) file a motion to arrest judgment to challenge the defective information, (5) request jury instructions on lesser included offenses and on a definition of overt act, and (6) inform Calvin that he had the right to testify in his own defense. After conducting an evidentiary hearing, the district court denied Calvin's motion. A panel of this court affirmed the district court's ruling. See *Calvin v. State*, No. 98,069, 2008 WL 1722241, at *1, 7 (Kan. App. 2008) (unpublished opinion) (*Calvin II*).

In November 2008, Calvin filed another motion under K.S.A. 60-1507. Calvin filed this second motion on his own behalf without the assistance of a lawyer. In addition to raising numerous trial errors, Calvin argued that trial counsel was ineffective, appellate counsel in his direct criminal appeal was ineffective, and K.S.A. 60-1507 counsel was ineffective. At some point after this motion was filed, Calvin hired an attorney to represent him. This attorney filed two separate supplemental motions: one seeking a new trial based on a claim of newly discovered evidence and one raising additional issues, including various new claims of ineffective assistance of counsel.

The district court held an evidentiary hearing on all of Calvin's motions. At the hearing, Calvin stated his belief that all three attorneys provided him ineffective assistance and discussed each of the specific issues raised in his motions. Calvin also testified his claim of newly discovered evidence—that Melvin White had intended to kill

3

Coates—was not known at the time of his trial. In addition to his own testimony, Calvin presented testimony from the following witnesses.

*Reginald Harris*

Harris testified that he had been incarcerated with Calvin. Harris claimed that prior to his incarceration and shortly after Coates' murder, Russell confessed he and Melvin had shot Coates. The district court allowed Harris to proffer this testimony for the record but ultimately ruled that it was not admissible because Russell was not available to testify at the hearing.

*Linda White*

Linda White, Melvin's ex-wife, testified Melvin had threatened to kill Coates on several occasions. According to Linda, Melvin told her that Calvin had nothing to do with Coates' murder.

*S.W.*

S.W., an alternate juror in Calvin's trial, testified she did not believe Calvin was responsible for Coates' death. S.W. claimed that the district court did not properly instruct the jury and that the jury was confused and remained confused, even after the court answered a question from the jury.

*Melvin White*

Melvin testified that he went to Coates' house to kill him and that Calvin did not have anything to do with Coates' death. Melvin claimed that he was in prison at the time of Calvin's trial and that no one had contacted him on Calvin's behalf. Melvin said he wanted to help Calvin because Calvin had received a longer prison sentence than he had

4

received, even though he was the one who had killed Coates. Melvin testified that he had signed multiple affidavits absolving Calvin of guilt in Coates' death. Melvin admitted, however, that he signed these affidavits only after he entered into a plea agreement in the case.

After hearing argument from counsel, the district court took the case under advisement. The court ultimately filed an order denying Calvin relief. The district court later denied Calvin's motions to alter/amend or reconsider the judgment.

On appeal, a panel of this court affirmed the district court's ruling with respect to most of the issues raised in Calvin's motion. Specifically, this court found Calvin had failed to show exceptional circumstances justifying consideration of various claims because they were presented as part of a successive K.S.A. 60-1507 motion. This court also affirmed the district court's order denying Calvin relief on his motion for a new trial based on newly discovered evidence, finding that Melvin's testimony did not constitute newly discovered evidence. This court did not, however, affirm the district court's decision finding Calvin had failed to establish ineffective assistance of counsel. Instead, this court held the district court's findings on this issue were conclusory and failed to comply with Supreme Court Rule 183(j), which requires a court to make findings of fact and conclusions of law on all issues presented. As a result, the panel reversed the district court's order denying Calvin relief on his ineffective assistance of counsel claims and remanded "those claims to the district court for such proceedings as are necessary for it to comply with Rule 183(j)." *Calvin III*, 2014 WL 4080155, at \*8.

On remand, both parties filed proposed findings of fact and conclusions of law with the district court with regard to Calvin's claims of ineffective assistance of counsel. Calvin also filed multiple pro se motions, including a motion alleging actual innocence and a request for another evidentiary hearing. Without holding a hearing, the district court adopted the State's proposed findings and denied Calvin's claims of ineffective

5

assistance of counsel. Specifically, the court held that "no evidence was presented that the representation fell below a 'reasonable' standard. The claims of the plaintiff were not only another bite at the same apple, they were not supported by exceptional circumstances to qualify to be reviewed on a subsequent motion." The court also declined to consider Calvin's additional pro se pleadings, "as the remand from the appellate court was confined to a narrow issue . . . it was not a mandate to re-litigate or reopen argument which has, or could ha[ve] been raised in the prior proceedings." After the court issued its opinion, Calvin filed a motion seeking reconsideration, which the district court denied.

ANALYSIS

On appeal, Calvin argues the district court erred on remand in refusing to consider his claim of actual innocence and by denying his ineffective assistance of counsel claims against his three former attorneys. We address each of Calvin's arguments in turn.

1. *Actual innocence*

Calvin argues the district court erred in refusing to consider his claim of actual innocence as outside the scope of this court's remand. Calvin concedes that his claim is untimely under K.S.A. 2016 Supp. 60-1507(f)(1) but suggests that he presents a colorable claim of actual innocence that warrants relief under the manifest injustice exception set forth in K.S.A. 2016 Supp. 60-1507(f)(2).

Generally, on remand for further proceedings after a decision by an appellate court, the district court must proceed in accordance with the mandate and is prohibited from entertaining issues beyond the scope of the mandate. *State v. Collier*, 263 Kan. 629, 636, 952 P.2d 1326 (1998); see *State v. DuMars*, 37 Kan. App. 2d 600, 603, 154 P.3d 1120 (2007) (on remand, district court is obligated to effectuate mandate and may consider only "those matters essential to the implementation of the ruling of the appellate

6

court"). "Interpretation of an appellate court mandate and the determination of whether the district court complied with it on remand are both questions of law subject to de novo review." *State v. Morningstar*, 299 Kan. 1236, 1240-41, 329 P.3d 1093 (2014).

This court's mandate remanded Calvin's ineffective assistance of counsel claims to the district court "for such proceedings as are necessary for it to comply with Rule 183(j)." *Calvin III*, 2014 WL 4080155, at *8. By its language, the sole purpose of the remand was for the district court to comply with Rule 183(j) regarding Calvin's ineffective assistance of counsel claims. Calvin's supplemental motion alleging actual innocence did not relate to the limited issue for which the case was remanded to the district court. Therefore, the district court properly declined to consider Calvin's claim of actual innocence.

Moreover, as used in K.S.A. 2016 Supp. 60-1507(f)(2)(A), "the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." In denying Calvin's motion for a new trial based on newly discovered evidence, this court found that the evidence Calvin now relies on to support his claim of actual innocence—the documentation and testimony presented at the evidentiary hearing alleging that Melvin killed Coates and that Calvin had nothing to do with the murder—is not new evidence: "Melvin's affidavit and testimony contain a version of events consistent with what Calvin's counsel argued at trial. They do not vary to any considerable degree from the affidavit from [Melvin] that Calvin introduced in his last K.S.A. 60-1507 proceeding." *Calvin III*, 2014 WL 4080155, at *7. The law-of-the-case doctrine "'prevents relitigation of the same issues within successive stages of the same suit.'" *Collier*, 263 Kan. at 634. Accordingly, on remand, issues resolved on appeal "generally cannot be revisited, challenged on remand, or later appealed" under the law-of-the-case doctrine. *Boucek v. Boucek*, 297 Kan. 865, 870, 305 P.3d 597 (2013) (citing *Collier*, 263 Kan. at 631-34). In addition to being outside the

scope of this court's mandate on remand, Calvin's attempt to relitigate his newly discovered evidence claim under the guise of an actual innocence claim is improper.

2. *Ineffective assistance of counsel*

Calvin argues the district court erred in denying his claims of ineffective assistance of trial counsel, appellate counsel, and his first 60-1507 counsel. A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, the appellate court determines whether the district court's findings are supported by substantial competent evidence and then determines whether the factual findings support the court's legal conclusions; the appellate courts apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances and (2) the defendant was prejudiced by counsel's error. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for 60-1507 counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury; the reviewing court must strongly presume that counsel's conduct fell

8

within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Calvin concedes this is his second K.S.A. 60-1507 motion. In a 60-1507 proceeding, the sentencing court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner. *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013) (citing K.S.A. 60-1507[c]). "A movant in a K.S.A. 60-1507 motion is presumed to have listed all grounds for relief, and a subsequent motion need not be considered in the absence of a showing of circumstances justifying the original failure to list a ground." *Trotter*, 296 Kan. 898, Syl. ¶ 2. Even so, a successive motion may be considered, provided exceptional circumstances excuse the movant's failure to bring the claim in an earlier motion. *State v. Mitchell*, 284 Kan. 374, 379, 162 P.3d 18 (2007) (citing Rule 183[d]). "Exceptional circumstances" include "unusual events or intervening changes in the law that prevented the defendant from raising the issue in a preceding 60-1507 motion." 284 Kan. at 379.

Calvin asserts he has presented exceptional circumstances to justify a successive 60-1507 motion in this case. Specifically, Calvin argues Autumn Fox, the attorney who represented him in his first 60-1507 motion, provided ineffective assistance of counsel which, in turn, prevented him from reasonably being able to raise the errors made by his counsel at trial and by his counsel on direct appeal. We acknowledge that ineffective assistance of a prior 60-1507 counsel in failing to raise an issue can rise to the level of an exceptional circumstance to permit a successive 60-1507 motion. See *Trotter v. State*, 288 Kan. 112, 127, 200 P.3d 1236 (2009). The question presented is whether it did so in this case. Calvin makes 13 specific claims of ineffective assistance of counsel against Fox.

a. *Preprinted form for K.S.A. 60-1507 motions*

Calvin argues that Fox should be found ineffective because she filed a one-paragraph K.S.A. 60-1507 motion. Noting that he filed a 10-page pro se motion with exhibits, Calvin contends that Fox's failure to be aware that there exists a preprinted form for litigants who want to a file 60-1507 motion indicates that Fox was not competent to represent him.

We are not persuaded by Calvin's argument. First, Calvin presents no facts from which we can infer that Fox did not know a preprinted form existed for litigants who wanted to file a 60-1507 motion. See *Holt v. State*, 290 Kan. 491, 496, 232 P.3d 848 (2010) (mere conclusory allegations without an evidentiary basis will not support an ineffective assistance of counsel claim). And even if we construe Calvin's claim here to be one that alleges Fox's one-paragraph motion was deficient in some way, we cannot address such an allegation because Calvin failed to provide a citation in the record to the motion. See *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015) (party claiming error occurred has burden of designating record that affirmatively shows prejudicial error). Finally, even if Calvin had shown the one-paragraph motion was deficient, Calvin has failed to allege, let alone provide facts to support, how he was prejudiced. To the contrary, Calvin readily concedes he was provided a full evidentiary hearing on his motion.  Calvin's conclusory argument is insufficient to support this particular claim of ineffective assistance of counsel. See *Holt*, 290 Kan. at 496.

b. *Officers' statements at trial*

Calvin's next argument relates to the district court's decision at trial to allow the State to introduce into evidence a videotape of his confession, which also contained statements by law enforcement calling him a liar. Calvin argues that Fox's performance was deficient because she failed to argue in his 60-1507 motion that permitting the State

to introduce this evidence was error based on the Kansas Supreme Court's holding in *State v. Elnicki*, 279 Kan. 47, 105 P.3d 1222 (2005), decided on the same day as Calvin's appeal. In *Elnicki*, our Supreme Court held that a jury is prohibited from hearing videotaped statements made by a police officer regarding a defendant's credibility. 279 Kan. at 57.

We are not persuaded by Calvin's argument. Although not framed as trial error, Fox did, in fact, raise the issue about which Calvin now complains. Relying on *Elnicki*, Fox argued in Calvin's 60-1507 motion that Calvin's trial counsel was ineffective for failing to file a motion to suppress Calvin's videotaped statements and for failing to object when these statements were introduced at trial. On appeal, the *Calvin II* panel rejected this argument, stating in relevant part,

> "*Elnicki* was decided after the trial in this case, and the *Elnicki* opinion clearly states that the issue was one of first impression in Kansas. The reasonableness of trial counsel's performance is evaluated based upon the applicable law at the time of the representation. It was not unreasonable for trial counsel to fail to raise an issue based on a case that was not decided until over a year after the trial. [Citations omitted.]" *Calvin II*, 2008 WL 1722241, at *5.

Based on the discussion above, Calvin's claim that Fox's performance was deficient for failing to properly argue *Elnicki*'s application to his case is not supported by the record. See *Holt*, 290 Kan. at 496.

c. *Videotaped confession*

Calvin alleges that Fox should have argued that trial counsel was deficient by failing to file a motion to suppress the videotaped confession he made talking about his involvement in the crime. Calvin concedes that he challenged trial counsel's failure to file a motion to suppress his confession in his first 60-1507 motion but asserts that the only

11

issue raised at that time related to trial counsel's failure to suppress the confession based on a time-gap in the video. Calvin claims Fox should have challenged trial counsel's failure to challenge the confession as involuntary and coerced, as an inadmissible unsworn statement, and as a violation of his Sixth Amendment right to counsel under the United States Constitution.

But regardless of the specific reasons argued for suppression, this claim was fully addressed in Calvin's first 60-1507 proceeding. As noted by the panel in *Calvin II*, KiAnn McBratney's trial strategy specifically involved showing the entire videotape to the jury:

> "[T]rial counsel wanted the jury to see the demeanor of the interrogators in order to support the defense theory that Calvin's statements were coerced. It is not an unreasonable strategy to allow the jury to view the conduct of the interrogators when the defense theory is coercion, and counsel believes that the videotape will support that conclusion." *Calvin II*, 2008 WL 1722241, at *5.

Additionally, the panel held:

> "[E]ven if trial counsel was deficient in failing to file a motion to suppress or otherwise object, Calvin has not shown that such failure prejudiced the defense. The State filed a *Jackson v. Denno* motion to determine the admissibility of Calvin's statement, and the district court found the statements to be voluntarily given, noting that Calvin initiated the contact with the detectives. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed 2d 908 (1964). . . . [T]he videotape would likely have been admitted in its entirety despite any motion or objection raised by Calvin." 2008 WL 1722241, at *5.

Given this court's prior ruling on this issue, we agree with the district court that Fox's performance was not deficient for failing to challenge trial counsel's strategy relating to the videotaped confession.

d. *Probable cause*

Calvin claims Fox should have argued that trial counsel was deficient by failing to file a motion to suppress evidence on grounds that his arrest was not supported by probable cause. In support of this claim, Calvin argues that the only evidence law enforcement had at the time of his arrest was the fact that he was the "'last person seen with the victim.'"

Although Calvin testified generally at the evidentiary hearing that his "bogus arrest was unlawful as it lacked probable cause and all the evidence obtained through the unlawful arrest must be suppressed," he offered no evidence to support this argument. Nor does Calvin cite to any evidence or authority in his brief to establish a lack of probable cause for his arrest. Thus, Calvin's conclusory allegation that Fox's performance was deficient necessarily fails. See *Holt*, 290 Kan. at 496.

e. *Voir dire*

Calvin argues Fox should have challenged trial counsel's failure to remove a court employee and a probation officer from the jury panel during voir dire. Calvin claims these individuals should have been stricken for cause because they had "an obvious conflict" and were "highly unfavorable" to him.

But Calvin presented no evidence at the evidentiary hearing to support this argument. And on appeal, Calvin provides no explanation regarding any alleged conflict or behavior warranting the removal of these jurors. Nor does Calvin provide any authority to support his claim that the jurors should have been removed from the panel or were otherwise unable to serve on the jury merely because of their occupations. Thus, Calvin's conclusory allegation that Fox's performance was deficient is without support in the record. See *Holt*, 290 Kan. at 496.

13

f. *Jury instruction*

Calvin claims Fox should have argued that trial counsel was deficient by not objecting to the district court's failure to instruct the jury on specific intent. Calvin claims that the district court's failure to do so lessened the State's burden of proof because the jury was not required to find that Calvin had the specific intent to commit robbery.

As noted by the State, Calvin raised several arguments on direct appeal and in his 60-1507 motion relating to the district court's failure to give, or trial counsel's failure to request, certain jury instructions. See *Calvin I*, 279 Kan. at 201-07; *Calvin II*, 2008 WL 1722241, at *6. Although Calvin previously has not challenged the omission of a specific intent instruction, we conclude as a matter of law that the jury was properly instructed on specific intent. Felony murder is not a specific intent crime, so Calvin was not entitled to a specific intent instruction for that crime. See *State v. Robinson*, 256 Kan. 133, 136, 883 P.2d 764 (1994). But attempt crimes do require proof of the specific intent to commit the crime attempted. See *State v. Brown*, 291 Kan. 646, 654-55, 244 P.3d 267 (2011). To that end, the district court instructed the jury that in order to find Calvin guilty of attempted robbery, the State was required to prove:

> "1.  That the defendant performed an overt act, to wit:  distracted one John Coat[e]s in order to facilitate a robbery, toward the commission of the crime of Robbery;
>
> "2.  *That the defendant did so with the intent to commit the crime of Robbery*;
>
> "3.  That the defendant failed to complete the commission of the crime of Robbery; and
>
> "4.  That this act occurred on or about the 12th day of December, 2002, in Wyandotte County, Kansas." (Emphasis added.)

Calvin's claim that the jury was not required to find that he had the specific intent to commit robbery is unfounded. As a result, his claim that Fox should have argued trial

14

counsel was deficient by not objecting to the district court's failure to instruct the jury on specific intent is without factual or legal support.

g. *Russell's testimony*

Calvin alleges Fox should have argued that trial counsel was deficient by failing to object when the State knowingly presented perjured testimony from Russell at trial. But at the evidentiary hearing, Calvin offered no evidence to support his claim that Russell had perjured himself at trial. In fact, Calvin admitted that the claim was based only on his "assumption." On appeal, Calvin points to testimony from Russell at trial stating that law enforcement induced Russell to lie and further stating that law enforcement did not care when he later told them he was lying. But Calvin provides no citation to the record for this alleged testimony, which prevents us from verifying the testimony and placing it in context. The party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. *Sisson*, 302 Kan. at 128. And even if Calvin's allegations are true, Calvin fails to explain how this alleged testimony establishes that the State knowingly presented perjured testimony and therefore why trial counsel would be deficient in failing to object to it on this basis.

Calvin's claim that Fox should have argued that trial counsel was deficient by failing to object when Russell testified is without support in the record. See *Holt*, 290 Kan. at 496.

h. *Underlying felony*

Calvin argues Fox should have alleged trial counsel was deficient by failing to file a motion to vacate the jury's verdict on grounds that the charge of attempted robbery is not an inherently dangerous felony, as required to support the charge of felony murder.

15

Calvin also argues Fox should have alleged appellate counsel was deficient by failing to raise this issue on direct appeal.

We are not persuaded by either of Calvin's arguments. Felony murder is the killing of a human being "in the commission of, *attempt to commit*, or flight from an inherently dangerous felony." (Emphasis added.) K.S.A. 2016 Supp. 21-5402(a)(2); see *State v. Cheffen*, 297 Kan. 689, 702, 303 P.3d 1261 (2013) (crime of felony murder requires proof that killing occurred while defendant "was committing, attempting to commit, or fleeing from an inherently dangerous felony"). Robbery is included in the statutory list of inherently dangerous felonies. K.S.A. 2016 Supp. 21-5402(c)(1)(C). The Kansas Supreme Court found that the evidence was sufficient to support the jury's finding that Coates' killing occurred during an attempt to commit the underlying felony of robbery. See *Calvin I*, 279 Kan. at 198-201. As such, we find no factual or legal support for Calvin's claim that Fox should have argued that the performance of trial counsel and appellate counsel were deficient on this issue. See *Holt*, 290 Kan. at 496.

i. *Miscellaneous claims of deficiency*

First, Calvin alleges Fox should have argued that trial counsel had a conflict of interest while representing Calvin because she was married to a Wyandotte County sheriff's officer and because she had been previously employed by the Wyandotte County District Attorney's Office. Calvin suggests that McBratney had "divided loyalties" given her marriage and prior work experience that directly impacted her willingness to advocate on his behalf at trial. Calvin claims that he would not have agreed to her representation if he had known of the alleged conflict.

To demonstrate that a conflict of interest resulted in ineffective assistance of counsel, a defendant has the burden of proving (1) the existence of an actual conflict of interest between the attorney and client and (2) the conflict adversely affected the

16

adequacy of the attorney's representation. *State v. Cheatham*, 296 Kan. 417, 448, 292 P.3d 318 (2013).

Apart from simply alleging such a conflict, Calvin has pointed to no direct or circumstantial evidence of such a conflict, has not discussed how the alleged conflict adversely affected the jury trial resulting in his convictions, or otherwise provided any support for his conclusory statement that McBratney's marriage and previous employment presented a conflict of interest during her representation of Calvin. As such, Calvin's allegation that Fox was deficient in failing to argue that trial counsel had a conflict of interest is without support in the record.

Next, Calvin alleges Fox was deficient by failing to challenge trial counsel's stipulation to Coates' cause of death because there was no question as to how Coates died. Calvin claims that if trial counsel had done so, the State would have had no reason to admit highly prejudicial autopsy photographs and a crime scene video into evidence.

But, again, Calvin provides no support for his conclusory allegation that such a stipulation would have prevented the State from introducing the photographs and video into evidence.

> "Even where the defendant concedes the cause of death, the prosecution has the burden to prove all the elements of the crime charged; photographs to prove the elements of the crime, including the fact and manner of death and the violent nature of the crime, are relevant and admissible. Photographs depicting the extent, nature, and number of wounds inflicted are generally relevant in a first-degree murder case." *State v. Smallwood*, 264 Kan. 69, 84, 955 P.2d 1209 (1998).

Thus, even if trial counsel had stipulated to Coates' cause of death, the State still could have sought admission of the autopsy photographs and crime scene video for any

17

number of reasons. For this reason, we conclude Fox's performance was not deficient in failing to challenge trial counsel's stipulation to Coates' cause of death.

Finally, Calvin argues Fox was deficient in failing to allege that trial counsel did not properly prepare for trial. More specifically, Calvin argues trial counsel failed to review his confession, review the autopsy photographs, accurately document work on his case, and investigate and review other crucial evidence prior to trial. But once again, Calvin presented no evidence or testimony at the evidentiary hearing on this issue. On appeal, Calvin similarly provides no authority to support his claims that trial counsel actually failed to prepare for trial in the manner he alleges. Conclusory allegations, without more, are insufficient to support a claim of ineffective assistance of counsel. See *Holt*, 290 Kan. at 496.

j. *Testimony by appellate counsel*

Calvin argues Fox was deficient in allowing appellate counsel to testify at the first 60-1507 evidentiary hearing and in failing to properly prepare appellate counsel for examination at the hearing.

First, Calvin claims that appellate counsel should not have been permitted to testify at the 60-1507 evidentiary hearing given appellate counsel's deficient performance in representing Calvin on direct appeal. Calvin asserts that appellate counsel's participation in the hearing effectively prevented Fox from raising multiple claims at the evidentiary hearing related to appellate counsel's ineffectiveness. In support of this assertion, Calvin testified that appellate counsel recommended Calvin hire Fox to represent him in the first 60-1507 proceeding and Calvin believed Fox intentionally did not bring any ineffective assistance of counsel claims against appellate counsel due to this referral.

18

But Calvin does not present any evidence to support his claim that it was legally or factually improper to have appellate counsel testify at the first 60-1507 hearing or that Fox would have raised ineffective assistance of counsel claims against appellate counsel even if appellate counsel had not recommended Calvin hire Fox. In fact, it is quite common in a 60-1507 proceeding for appellate counsel to testify about trial counsel's performance. Here, appellate counsel testified that trial counsel was ineffective for failing to "object to the admission of Calvin's videotaped statements, file pretrial motions, request jury instructions, and meet with and prepare Calvin for trial. He also expressed concern with trial counsel's investigation of witnesses and communication with Calvin regarding his right to testify." *Calvin II*, 2008 WL 1722241, at *1. If Fox had wanted to bring ineffective assistance of counsel claims against appellate counsel, Fox presumably could have called another witness to testify to trial counsel's deficiencies.

Next, Calvin contends that Fox's performance was deficient because Fox failed to provide appellate counsel with the materials necessary to adequately prepare appellate counsel for his testimony at the evidentiary hearing on Calvin's first 60-1507 motion. Although appellate counsel testified at the hearing that he had not viewed the videotape of Calvin's confession, he stated he had read the trial transcript. Other than Calvin's conclusory allegation that appellate counsel was not adequately prepared to testify, there is nothing in the record to support his claim that Fox's performance was deficient in preparing appellate counsel to testify. In fact, we have reviewed the record and it appears that appellate counsel testified in detail about trial counsel's performance in several respects, which indicates to us that appellate counsel was well prepared to testify. See 2008 WL 1722241, at *1. Calvin's conclusory allegations that Fox was deficient in allowing appellate counsel to testify and inadequately preparing appellate counsel for such testimony are without support in the record. See *Holt*, 290 Kan. at 496.

k. *Crime scene diagram*

During deliberations, the jury asked if it could review a crime scene diagram that had been referenced but not offered or introduced into evidence at trial. The district court told counsel that it would be willing to allow the jury to review the diagram if both parties agreed. The prosecutor objected to the jury's review of the diagram on grounds that it was a demonstrative, unadmitted exhibit presented by the police that several witnesses had written on during their testimony. The State also noted that the jury could rely on other admitted evidence, including crime scene video and photographs. In response, Calvin's trial counsel advised the court that she had no issue with the jury viewing the diagram. The district court ultimately decided not to allow the jury to view the diagram.

Calvin alleges Fox should have argued that appellate counsel was deficient in failing to claim on direct appeal that the district court improperly prevented the jury from reviewing the diagram during deliberations. Calvin claims that the diagram was integral to his defense because it discredited Russell's testimony and that the court's decision to keep the jury from reviewing it violated his due process rights.

Properly admitted exhibits are customarily given to the jury for examination during deliberations, but the manner in which exhibits ultimately are handled at trial is within the district court's discretion. *State v. Poulos*, 230 Kan. 512, 514, 639 P.2d 477 (1982). Here, the diagram was not admitted into evidence at trial, so it was not given to the jury for examination as a matter of course. Calvin provides no support for his conclusory allegation that the diagram was integral to his defense, that it would have discredited Russell's testimony, or that appellate counsel was deficient for failing to argue that the district court abused its discretion in refusing to allow the jury to review the diagram. Accordingly, Fox was not deficient for failing to challenge appellate counsel's

20

performance related to raising the crime scene diagram issue on direct appeal. See *Holt*, 290 Kan. at 496.

l. *Russell's plea negotiations*

Calvin alleges Fox should have argued that appellate counsel was deficient for failing to raise an issue on direct appeal challenging Russell's credibility; specifically, Russell's plea to unrelated charges in a different case shortly after Calvin's trial. Calvin suggests that the timing of Russell's plea should have raised a concern that the State purposely delayed plea negotiations until after Russell provided useful testimony against Calvin and/or that Russell only testified against Calvin to receive a more favorable plea offer in the other case.

Calvin provides no support for this argument. Calvin testified at the evidentiary hearing that he believed the district court should have investigated Russell's plea negotiations with the State. But Calvin also testified that the information relating to Russell's plea agreement had not been withheld from him, that he knew Russell had been charged with other crimes at least three days before trial, and that he had no evidence to offer in support of his speculative belief that Russell's plea in the other case in any way affected Russell's testimony at Calvin's trial. Calvin's conclusory allegation does not provide support for his claim that Fox was deficient in failing to challenge the decision by appellate counsel not to raise this issue on direct appeal. See *Holt*, 290 Kan. at 496.

m. *Jury question*

During deliberations, the jury asked "'if there could be a separation of verdicts of counts one and two and has [this] been done in the past legally.'" The district court proposed an answer referring the jury to instruction No. 12. The State agreed with the court's proposed response, while Calvin's trial counsel said she would prefer the court add

21

the following language to the response, "[Y]es, it has been done in the past legally." Trial counsel acknowledged that "the court's probably not going to do that." As predicted by trial counsel, the court opted not to include the additional language and simply referred the jury to instruction No. 12. This instruction stated:

> "Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the Presiding Juror."

Calvin claims Fox was deficient in failing to challenge the decision by appellate counsel not to argue on direct appeal that the district court failed in its obligation to fully answer the jury's question. Calvin asserts the court's reference to instruction No. 12, without an affirmative statement that the jury could separate the verdicts, was not a full and complete response and did not clarify the jury's confusion.

Contrary to Calvin's argument, the district court's reference to instruction No. 12 informed the jury that it was to decide each charge separately and that it could convict or acquit Calvin on any or all of the charges. Calvin admitted as much at the evidentiary hearing but speculated that the jury was still confused by the district court's response. Testimony from S.W., the alternate juror, that the jury remained confused following the district court's response to its question was similarly speculative and conclusory. Without more, we are not persuaded that Fox was deficient in failing to raise this issue in Calvin's first 60-1507 motion. See *Holt*, 290 Kan. at 496.

CONCLUSION

For the reasons stated above, we find Fox's performance as Calvin's attorney in his first K.S.A. 60-1507 proceeding was satisfactory and not deficient in any way. For this

22

reason, we find Calvin has failed to show exceptional circumstances justifying consideration of his ineffective assistance of counsel claims because they are presented as part of a successive K.S.A. 60-1507 motion. See *Sola-Morales*, 300 Kan. at 881-82; *Trotter*, 288 Kan. at 127.

Affirmed.